## YALE *v.* DEDERER and wife.

A married woman does not charge her separate estate by the execution of a promissory note with her husband and as his surety, not for her own benefit or the enhancement of her estate.

The statutes ( *ch.* 200 *of* 1848 and *ch.* 375 *of* 1849 ) " for the more effectual protection of the rights of married women " do not remove their legal incapacity to contract debts.

Equity recognizes a married woman's debt and charges it upon her separate estate, not on the ground that the contracting it is of itself an appointment or charge, but because, when contracted on the credit of the separate estate, or for its benefit or that of the woman, it is just that the estate should answer it.

When the married woman is a mere surety, then equity will not enforce against her a promise which is void at law, and in such case her separate estate can only be charged by virtue of some instrument for that express purpose.

*It seems* that, as incident to the power of disposition given by the statutes of 1848 and 1849, a married woman may create an express charge on her separate estate, held under them, in the same manner as if she were a *feme sole.*

APPEAL from the Supreme Court. Action to charge the separate estate of Mrs. Dederer, a married woman, with the payment of a promissory note which she had signed with her husband, N. A. Dederer, who was a party defendant, On the trial at special term in Chenango county, before

Mr. Justice MASON, it was proved that the consideration of the note was the price of thirty-eight cows, purchased by Mrs. Dederer's husband of the plaintiff. Mrs. Dederer, at the time of the sale and of the giving of the note, owned three farms in different towns of Chenango county, and had during the same time personal property separate from her husband. The plaintiff refused to sell the cows except upon the condition that the purchaser should procure his wife, Mrs. Dederer, to sign a note with him for the price. There was some evidence tending to show that some of the cows went to stock one of Mrs. Dederer's farms. It was proved that Mr. Dederer was insolvent; that the plaintiff had obtained a judgment against him on this note, an execution upon which had been returned *nulla bona,* and that he had made a general assignment of his property for the benefit of his creditors. It was admitted that Mrs. Dederer had a separate property, in real and personal estate, amply sufficient to satisfy the plaintiff's demand; but it did not appear when or in what manner she became possessed thereof, or whether her estate was legal or equitable. The judge found that there was not sufficient evidence to establish the fact that the cows were purchased for the benefit of Mrs. Dederer, or that they went to enhance her separate estate, or that the avails of the cows went for her benefit, and that she signed the note as surety for her husband. He directed judgment, however, charging her separate estate with payment of the note, providing for the appointment of a receiver thereof, and authorizing the sale of her land in default of a sufficiency of personal estate to pay the debt. The judgment thereupon entered was, on appeal, affirmed at a general term in the sixth district, and Mrs. Dederer appealed to this court.

*B. G. Ferris,* for the appellant.

*Henry R. Mygatt,* for the respondent.

COMSTOCK, J.   If we assume that the lands of Mrs. De
derer, the appellant, which the plaintiff seeks to charge as
her separate estate, are held under a trust for her separate
use, and if the trust was created since 1830, the judgment
appealed from is erroneous for reasons depending on that as-
sumption alone.   By the law of uses and trusts, as revised in
that year (1 *R. S., pp.* 728, 729), there can be no express trusts
in lands except such as the statute (§ 55) authorizes, and, in
respect to those, it is declared (§ 60) that "every express
trust, valid in its creation (except as otherwise provided
for), shall vest the whole estate in the trustees, subject only
to the execution of the trust.   The persons for whose bene-
fit the trust is created shall take no estate or interest in the
lands, but may enforce the performance of the trust in equity."
Now, a married woman may be the beneficiary in any one
of the trusts which the statute allows to be created, but, like
other beneficiaries, her power is qualified by the section
quoted.   She cannot alienate or encumber the title, which
is entirely in the trustee.   As she takes "no estate or in-
terest," she has nothing to dispose of either absolutely by a
sale or contingently by a charge which may result in a sale.
(*L'Amoureux* v. *Van Rensselaer*, 1 *Barb. Ch. R.*, 37; *Noyes*
v. *Blakeman*, 3 *Sandf. S. C. R.*, 531.)   The power to dis-
pose of the accruing income under one of these trusts need
not now be considered, because the decision under review
requires the land itself to be sold in default of personal es-
tate sufficient to pay the debt in question.   Without regard,
therefore, to incapacity resulting from coverture, Mrs. De-
derer could not, on the assumption of a trust, thus dispose
of her estate.

I incline to think, however, that we should not presume
the existence of any trust, upon the case as it is presented
to us.   The appellant admits in her answer that she has
separate estate, consisting of certain lots of land and per-
sonal property, sufficient to satisfy the demand which the
plaintiff seeks to enforce.   But she does not explain the nature

of her interest or title; and the case made on the trial only shows that she owns three farms in the county of Chenango, without any statement as to the mode in which the estate was acquired or the character of the title by which she claims it. Mr. Dederer appears to have been joined in the suit as husband merely. The character of a trustee for his wife is not imputed to him, and no other party is brought before the court sustaining that relation.

In this posture of the case, I think we must assume that the appellant's title is legal and not equitable. Indeed, her admission, and the statement in the case, that she has a separate estate in lands, would, as we have seen, be false in fact and in law, if we take for granted the existence of a trust for her benefit created within the last twenty-eight years. Again, if the plaintiff sought to charge her separate equitable estate, the trustee having the title would be an indispensable party. We should expect, moreover, that the deed or instrument creating the trust would be set forth, in order that the court might determine whether its provisions are consistent with the attempt to charge the estate. For, although a married woman may charge or dispose of property held in trust for her separate use, it is well settled that she cannot do so in any manner or for any purpose inconsistent with the restraints which the author of the trust has seen fit to impress upon it. (*Jacques* v. *The Methodist Episcopal Church*, 1 *John. Ch. R.*, 450; *S. C. on appeal*, 17 *John.*, 548.) The fact found and admitted, that Mrs. Dederer has a separate estate, by no means requires an inference that the property is held under a trust. By the statutes of this state which had been in force several years before this suit was commenced (*Laws of* 1848, *ch.* 200, *and of* 1849, *ch.* 375), she could acquire and hold in actual possession and enjoyment a separate legal estate in lands or personal property. So, before those statutes were passed, and at the common law, she could hold such an estate in

lands vested in interest, although not in actual enjoyment while the coverture remained.

Regarding, then, the appellant as the owner of the lands which are called her separate estate, without the intervention of any trust, the plaintiff's case is met by another difficulty. Do the disabilities of coverture prevent her from disposing of or charging an estate in lands in which she has the legal and the whole title? Until the change which has been mentioned was made by the legislature in the law of trusts, there was a well settled doctrine that a married woman could deal with her separate estate as though she were a *feme sole*. But this doctrine was a pure creation of the courts of equity. Trusts for the separate use of married women were a marked although a beneficent innovation upon the rules of the common law. But when the courts of equity sustained their validity and recognized the wife's estate under them, it seemed to be a necessary result that she should have the power of disposition; and accordingly the power was conceded. In many of the adjudged cases, the exercise of this power has been spoken of as an appointment of the estate authorized by the deed or settlement in trust; but the settled doctrine now is, that she may dispose of or charge the estate in any manner and for any purpose not conflicting with the instrument under which she acquired it. (*Jacques* v. *Methodist Episcopal Church, supra, and cases cited.*) The right of disposition must, therefore, be referred to the right of property enjoyed independently of the husband, and not to the theory of appointment pursuant to a power conferred by the author of the trust. She might be restrained by the provisions of the trust deed or instrument; but if not so restrained, she acted as a *feme sole* in the disposition of her separate estate.

But the separate estates upon which the courts of equity engrafted these peculiar doctrines included necessarily only such rights and interests of the wife as would belong to the husband but for the limitation to her particular use. Such

were personal estate, the rents and profits of lands during coverture, and the inchoate title which, by the birth of a child, the husband might acquire as tenant by the curtesy. As to all such interests, the assent of the husband to a separate use, duly manifested, or a direction to that effect by the donor of the estate, would give to the wife all the disposing capacity of a *feme sole*. But her own reversion in lands, when she owned them at the time of the marriage, was a legal estate descendible to her heirs, to which courts of equity did not and could not well apply the doctrines which have been stated. In reference to such an estate, she only had the disposing capacity which the common law or some enabling statute allowed to her. She could divest her title and bar the descent to her heirs, in England only by a fine or recovery, and in this country only by a conveyance with certain solemnities of examination and acknowledgment. Her acquisition, through a trust, of equitable rights which at law would belong to the husband, manifestly could not enlarge her capacity to deal with estates which at law as well as in equity were entirely her own.

So an estate in fee might be conveyed directly to a woman after marriage, to her sole and separate use. In such a case, equity would convert the husband into a trustee for her of the rents and profits, during the coverture, which otherwise would belong to him. In dealing with those, she would have the capacity of a *feme sole*, upon the principles which have been stated. But in respect to the *corpus* of the estate, she could not dispose of it except in the mode prescribed by law, that is, by a fine or recovery, or such other solemnity as the law required for the disposition of estates in land by married women. (*Roper on Husband and Wife*, 182; 2 *Story Eq.*, § 1392; *Clancy Rights of Married Women*, 287, *and cases cited in notes to these authorities.*) If, however, the deed to her during her coverture not only conveyed the estate to her, to her sole and separate use, but in terms

gave her an absolute power of disposal, then, acting under the power specially conferred, it seems she could, without the solemnities required by law, convey the whole estate, although no trust was interposed to protect the exercise of the power. ( *Story Eq.*, *supra*.) But this required the aid of no doctrine of equity peculiar to separate estates, for a married woman may execute a power without imputing to her the character or capacity of a *feme sole*. Equity, it seems, in such cases, if not the law, preserved the power, although the donee also held the fee of the lands in respect to which it was to be exercised.

These general principles, which scarcely admit of question, are evidently fatal to the present attempt to charge the fee of Mrs. Dederer's lands, and to dispose of that fee for the satisfaction of her alleged debt. The well known disabilities of coverture, as they exist at the common law, prevented her from thus disposing of her real estate. This would be decisive of the case before us, but for the recent legislation of this state "for the more effectual protection of the rights of married women." (*See the Statutes of* 1848 *and* 1849, *above cited*.) It has not been claimed on the argument that the case is influenced favorably to the plaintiff by these statutes. They nevertheless seem to require some consideration.

The act of 1849, amending the law of 1848, provides that " any married female may take, by inheritance, gift, &c., and hold to her sole and separate use, and *convey and devise*, real and personal property," &c., in the same manner and with the like effect as if she were unmarried. In respect to estates acquired and held under the protection of this statute, the disabilities of coverture would seem to be removed. A married woman may "convey and devise" real and personal property as if she were unmarried. She may, therefore, dispose of lands, in which she holds the legal title, without joining with her husband in the conveyance, and without the solemnity of private examination and acknowledgment.

I think it is plain, however, that the statute does not remove the incapacity which prevents her from contracting debts. She may convey and devise her real and personal estate, but her promissory note or other personal engagement is void, as it always was by the rules of the common law. This legal incapacity is a far higher protection to married women than the wisest scheme of legislation can be, and we should hardly expect to find it removed in a statute intended for "the more effectual protection of her rights." It is quite another question, however, whether she may not charge her legal estate, held under this statute, in the cases and to the extent recognized by courts of equity in respect to estates held under a trust for her separate use. The right to charge her separate estate, in equity, resulted from the *jus disponendi* which courts of equity regarded her as having, and it was a necessary incident of the full enjoyment of her property. It would seem, for reasons quite similar, that she should have the power to charge an estate acquired and held under the statute referred to. The estate it is true, is a legal one; but the disability of coverture, which, as we have seen, prevented her from disposing of or charging such estates in equity, no longer exists. That disability, as we have also seen, was overcome when she acted under a power of disposition conferred by the instrument conveying the estate. But that power is given in the broadest terms by the statute, and I see no reason why a power thus bestowed should not be equal in its results to one conferred by a private instrument. My conclusion, therefore, is that, although the legal disability to contract remains, as at common law, a married woman may, as incidental to the perfect right of property and power of disposition which she takes under this statute, charge her estate for the purposes and to the extent which the rule in equity has heretofore sanctioned in reference to separate estates.

But without knowing facts which are not stated in the case, such as the time of Mrs. Dederer's marriage and the

time when she acquired the lands in question, it is impossible to say with any certainty whether she holds her title under the statute and with the power of disposition which it confers. If we assume that to be her condition (and the facts may so appear hereafter), then we are brought to the question principally discussed on the argument, and that is whether she can and does charge her separate estate, real or personal, by signing a promissory note, in no way for the benefit of such estate, but as surety merely for her husband. This question I have examined with the attention which its importance deserves.

The contract of a married woman being void at law, the difficulty of subjecting her estate in equity to the payment of a note or bond given by her was felt by the courts to be very great. The difficulty was, however, overcome, and the rule must now be regarded as settled, that the written engagements of a married woman, entered into on her own account, to pay money, are to be satisfied out of her separate estate. (*North American Coal Company* v. *Dyett*, 7 *Paige*, 9; *Heatley* v. *Thomas*, 15 *Ves.*, 596; *Bullpin* v. *Clarke*, 17 *Ves.*, 365; *Stuart* v. *Kirkwall*, 3 *Madd.*, 387; *Owens* v. *Dickenson*, *Craig & Phil.*, 48; 2 *Story Eq.*, § 1400.) Where the obligation is not on her own account, and in no sense for the benefit of her estate, the question, whether a charge is thereby created, must depend, I think, on the principle which lies at the foundation of the rule just stated. If the note or bond of a *feme covert* is to be taken as a particular appointment of her estate to pay it, in the nature of an execution of a power of disposition, then I see no reason for a distinction where she is a surety merely. This was the theory of some of the cases on the subject, but this was obviously a mere fiction. A simple engagement to pay money is not in its nature an engagement to pay out of any particular fund, and cannot, except by a fiction, be regarded as an appointment or disposition of the fund. There is also this further difficulty, which was suggested by Lord COTTEN-

HAM, in *Owens* v. *Dickenson* (*supra*), that if a married woman has contracted several debts in writing, and the instruments are to be regarded as appointments of her estate, the creditors would take priority according to the date of the several instruments. The contrary of this is plainly true. The creditors of a *feme covert* have no priority over each other, unless it be acquired by superior diligence in proceeding to obtain satisfaction, or by some specific lien expressly created for that purpose. Again, as the law now is with us, since the statute of 1849, suppose before or after marriage she takes real or personal estate by inheritance or distribution : in such a case, the fiction of appointment under a power, when she disposes of such an estate, is too absurd to be for a moment entertained.

The earliest cases on this subject proceeded on a more intelligible principle, which did not require the aid of a fiction. Thus, in *Norton* v. *Turville* (2 *P. Wms.*, 145), payment of a married woman's bond, given for money borrowed by her, was decreed out of her separate estate, on the ground that it was to be deemed as held in trust for the payment of her debts. This was regarded as one of the separate uses for which the trust was created. So, in *Peacock* v. *Monk* (2 *Ves., Sen.*, 193), Lord HARDWICKE said : If a wife, having an estate to her separate use, borrowed money and gave a bond for its payment, this would give a foundation to demand the money out of her separate estate. So also, in *Hulme* v. *Tenant* (1 *Brown C. C.*, 20), Lord THURLOW held that the trustees of a married woman's estate were obliged in equity to apply it to the satisfaction of her general engagements. These early cases did not suggest the fiction of an appointment, but proceeded on the notion of a trust and the plain equity of requiring a married woman's engagement, entered into for her own benefit, to be satisfied out of the trust estate. Afterwards that fiction was resorted to, which, besides the objection to it as a mere assumption, having not the slightest foundation in fact, worked the

Yale *v.* Dederer.

actual injustice of rejecting the claims of creditors whose demands were based upon a mere general assumpsit for money had and received, where there was no written engage ment to pay. In such cases the fiction of appointment was too grave to be received, and therefore, as there was no appointment, there could be no charge, and so it was held. (*Bolton* v. *Williams*, 2 *Ves.*, *Jr.*, 138; *Jones* v. *Harris*, 9 *id.*, 486.)

But the still later cases have in terms or effect repudiated the fiction of an appointment, and with it the distinction between the written engagement of a *feme covert* and her general liability for money advanced, services rendered or goods sold. In *Owens* v. *Dickenson* (*supra*), Lord COTTEN-HAM restored the liability of separate estates to the basis on which it had been rested in the early cases above cited. His observations in that case demonstrate with great clearness that a simple note or bond cannot, in its very nature, be an appointment or charge upon the estate. Speaking of such instruments, he said : "It has sometimes been treated as a disposing of the particular estate; but the contract is silent as to the separate estate, for a promissory note is merely a contract to pay, without saying out of what it is to be paid or by what means it is to be paid, and it is not correct, according to legal principles, to say that a contract to pay is to be construed into a contract to pay out of a particular property, so as to constitute a lien on that property." "Equity," he adds, "lays hold of the separate property, but not by virtue of anything expressed in the contract; and it is not very consistent with correct principles to add to the contract that which the party has not thought proper to introduce into it." (*Murray* v. *Barlee*, 3 *Myl. & K.*, 209 *Bill on the Law of Property*, 518, 519; *Macqueen on Husband and Wife*, 301, 303.) The principle, in short, which now governs in cases of this kind, is that a wife's separate estate is liable to pay her debts during coverture, in whatever form they are incurred, not because her contracts have any vali-

dity at law, nor by way of appointment or charge, but because equity decrees it to be just that they should be paid out of such estate. Of course, it is not to be denied that a wife may appoint or specifically appropriate her separate estate to the payment of her own or her husband's debts. She may, if she pleases, even give it to her husband. What I am denying is that contracting the debt is, of itself, an appointment or charge.

Can, then, the principle on which the liability depends be extended to cases of mere suretyship for the husband or a stranger? It seems to me it cannot. The obligation of a surety, in all other cases, is held to be *stricti juris*, and if his contract is void at law, there is no liability in equity founded on the consideration between the principal parties. Thus, in *Ludlow* v. *Simond* (2 *Cai. Cases in Error*, 1), the bill was filed to sustain a contract against a surety who had been technically discharged at law. The subject was very fully examined in the Court of Errors by Chief Justice KENT and by Justices SPENCER and THOMPSON, and the suit was determined against the plaintiff, on the ground that there was no equitable liability upon a surety where he could not be held at law. Why should a married woman be made an exception to this rule? We are to remember that her contract is absolutely void at law; and when she is a mere surety there is no equity springing out of the consideration. If the promise is on her own account, if she or her separate estate receive a benefit, equity will lay hold of those circumstances and compel her property to respond to the engagement. Where these grounds of liability do not exist, there is no principle on which her estate can be made answerable. If we hold that the signing of a note as surety brings a charge upon her estate, we must go further, and hold also that her guaranty, her indorsement, her accommodation acceptance, her bail bond, indeed every conceivable instrument which she may be persuaded to sign for her husband or others, although absolutely void at law, are so far binding in equity

as to charge her property with its payment. This would be a doctrine sustained by no analogies and opposed to the soundest policy. It would go far to withdraw those checks which are intended to preserve a wife from marital influences, which may be and often are unduly exerted,. and yet baffle all detection. The doctrine that equity regards her as a *feme sole*, in respect to her separate estate, only admits that she may dispose of such estate with or without consent of her husband, and without the solemnities which the law in other cases requires. But her mere promise to pay money, as we have seen, is not of itself such a disposition. Courts of equity, proceeding *in rem.*, will take hold of her estate and appropriate it to the payment of her debts. But when her obligation is one of suretyship merely, she owes no debt at law or in equity. If not at law, which is very clear, then quite as clearly not in equity.

It is true, there are one or two English cases in which the trustees of a wife's separate estate were decreed to apply the personal property or the rents and profits of lands to the payment of her obligation as surety. ( *Stanford* v. *Marshall*, 2 *Atk.*, 69 ; *Heatley* v. *Thomas*, 15 *Ves.*, 596.) But those cases were decided at a period when the doubt was whether a mere obligation of any kind to pay money could bring a charge upon her estate, without any reference to the distinction between debts contracted for the benefit of herself or of the estate, and engagements entered into as a surety. That distinction was not considered. On the authority of those cases, *dicta* to the same effect may be found in one or two elementary treatises. (2 *Story Eq.*, § 1400.) We have also been referred to the case in this court of *Vanderheyden* v. *Mallory* (1 *Comst.*, 452). But the point determined was, that the debts of a wife contracted before marriage were not a charge upon the separate estate held by her during the coverture. The remark of Ch. J. Jewett upon the question now involved was *obiter* merely, and it appears to have been founded entirely on the observa-

tion cited from Judge STORY. The case did not call for an examination of any such question. No decision in this state has ever gone beyond the doctrine which I have stated. ( *Curtiss* v. *Engel*, 2 *Sand. Ch. R.*, 287 ; *North American Coal Company* v. *Dyett*, 7 *Paige*, 9; *S. C.*, 20 *Wend.*, 570.) In *Curtiss* v. *Engel*, it was held by Vice-Chancellor SANDFORD that, in order to create a charge, it must be shown either that the debt was contracted for the benefit of the wife's separate estate or for her benefit upon the credit of such estate.

I am satisfied, on the whole, that the decision now under review is, upon the facts before us, opposed to principle and sound policy, and that it rests upon the basis of no established doctrine. The judgment should be reversed and a new trial granted.

HARRIS, J. The effect of marriage at the common law, is to vest the property of the wife in the husband — personal estate absolutely, and real estate during the continuance of the marriage. But in equity, and now by statute, the wife is capable of holding both real and personal property to her own separate and exclusive use. Incidental to this capacity, is the power of disposition ; so that now, except in cases where she is restricted by the terms of the instrument under which she acquires title, the wife has the same dominion and power of disposition in respect to her separate property, as if she were unmarried.

But while, in respect to her separate property, the disability of coverture no longer exists, it still remains in respect to all her executory contracts. No personal remedy can be had against her in equity, any more than at law, upon any such contract. Her contracts are only valid, so far as they operate upon her separate estate. " Although she is still incapable of charging herself at law," says COWEN, J., in *Gardner* v. *Gardner* ( 22 *Wend.*, 526 ), " and equally incapable in equity of charging herself *personally* with debts, yet the

Yale *v.* Dederer.

better opinion is, that separate debts, contracted by her *expressly on her own account,* shall in all cases be considered an appointment or appropriation for the benefit of the creditor, as to so much of her separate estate as is sufficient to pay the debt, if she be not disabled to charge it by the terms of the donation."

In equity, there is no difference between the separate estate of a wife, created by operation of the statutes of 1848 and 1849, relating to married women, and a similar estate created by deed or any other instrument. If it be conceded that the effect of these statutes is to vest in her a legal title, whereas before, when her interest was acquired by means of a settlement or deed, she had only an equitable estate, still, so long as her contracts are affected by the disability of coverture, the debts of the wife can only be enforced against her separate estate, however acquired, by a specific charge of such debts upon the separate estate. This can only be done in a court of equity. The principle upon which this jurisdiction is exercised is well stated by Lord COTTENHAM, in *Owens* v. *Dickenson* ( *Craig & Phil.,* 48). It was there held that the engagements of a married woman ought to be enforced against her separate estate, not as the execution of a power, but as the exercise of a right of property to which is necessarily incident the power of contracting debts to be paid out of it. "Inasmuch," it is said, "as her creditors have not the means at law of compelling payment of those debts, a court of equity takes upon itself to give effect to them, not as personal liabilities, but by laying hold of her property, as the only means by which they can be satisfied." Though it is often said, that in equity the wife is regarded as a *feme sole* in regard to her separate property, yet it has never been supposed that even in equity she incurs a personal obligation by her engagements. There can be no proceeding against her *in personam.* She is regarded as a *feme sole,* only so far as to enable her to bind by her contract her own separate property. Upon this subject, I

concur in the views expressed by the judges of the Supreme Court, who delivered the prevailing opinions in *Colvin* v. *Currier* (22 *Barb.*, 371).

It remains to inquire whether, in this case, the wife has made such a contract as, by a proceeding *in rem* in a court of equity, should be enforced against her separate property. At the first, it was supposed that the wife could only bind her separate estate by some act creating a direct charge upon it. But in *Hulme* v. *Tenant* (1 *Brown C. C.*, 20), decided in 1778, the question was presented how far the general engagement of the wife should be executed out of her separate property. In that case, the suit was upon a bond executed by the husband and wife, for borrowed money. The principal part of the money had been borrowed by the wife herself. Lord THURLOW declared the rule to be, that the general engagement of the wife shall operate upon her personal property, and the rents and profits of her real estate; and that her trustees should be required to apply the personal estate, and the rents and profits as they might arise, to the satisfaction of such engagement. The doctrine of that case has been much discussed in the English courts of equity, but is now deemed to be settled by the decision of Lord BROUGHAM, in *Murray v. Barlee* (3 *Myl. & K.*, 209). In that case, a married woman, living apart from her husband, and having a separate estate, had employed a solicitor in various transactions and had promised by letter to pay him; it was held, that the separate property of the wife was chargeable with the payment of the solicitor's bill. It is worthy of remark, in reference to this case, that the services for which the plaintiff claimed to be paid out of the separate estate of the wife were rendered for a married woman who lived apart from her husband, and not only upon the credit but doubtless for the benefit of such estate. The single question before the court was, whether the pecuniary contract of a married woman, in which there was no reference to her separate estate, should be satisfied out of such estate

Yale *v.* Dederer.

It was regarded as a question of intent, and the court held, that inasmuch as the wife, when she made the engagement, could not be supposed to have intended to do an idle thing, she must be presumed to have intended to satisfy her engagement out of her separate property. The charge was established, because the circumstances of the case were such as to justify the inference that such was the intention of the wife.

Thus it appears that there are two modes in which the separate estate of a married woman may be charged with the payment of her pecuniary engagement. The *one*, where she has, in terms and by an appropriate instrument, made such charge ; and the *other*, where, though she has not, in making the contract, referred to her separate estate, or expressed her intention to satisfy it out of such estate, yet the circumstances of the case are such as to leave no reasonable doubt that such was her intention. What shall be deemed sufficient evidence to demonstrate such intention, has been regarded as a question of some difficulty. " The fact," says STORY, " that the debt has been contracted during the coverture, either as a principal or as a surety, for herself or for her husband, or jointly with him, *seems ordinarily* to be held *prima facie* evidence to charge her separate estate, without any proof of a positive agreement or intention so to do. (2 *Story's Eq. Jur.*, § 1400.) The extraordinary caution — perhaps I may say hesitation — with which this proposition is stated by the learned author, deserves to be noticed in this discussion. The writer himself adds that the proposition furnishes " a strong case of constructive implication, founded more upon a desire to do justice than upon any satisfactory reasoning."

It should be conceded, I think, that in England the decisions have gone the length of holding that where the wife living with her husband, gives her own note or other obligation to pay her own debts, or unites with her husband in giving such a note or obligation to pay his debt, it

shall, without any other evidence of her intention, be charged upon her separate estate. But in this state the rule has never been carried so far. The primary object in creating a separate estate and allowing the wife to hold and dispose of her separate property, independently of her husband, has been kept in view. " The wife," says the Chancellor, in *Gardner* v. *Gardner* (7 *Paige*, 112), " may have a separate estate of her own, which estate is chargeable in equity for any debt she may contract on the credit of, or for the use of, such estate." In the same case, upon appeal, Cowen, J., says : " The better opinion is, that separate debts, contracted by the wife *expressly on her own account*, shall in all cases be considered an appointment or appropriation for the benefit of the creditor as to so much of her separate estate as is sufficient to pay the debt." ( *Gardner* v. *Gardner*, 22 *Wend.*, 528.) The same rule is stated with still greater distinctness by the late Vice-Chancellor SANDFORD, in *Curtis* v. *Engel* (2 *Sand. Ch. R.*, 287) : " To sustain their suit," he says, " the plaintiffs must show that the debt was contracted *either for the benefit of the separate estate of the wife, or for her own benefit, upon the credit of the separate estate.*" He adds that " whatever may have been the expressions of judges on the subject, this is the utmost extent to which the doctrine has been carried by the decisions in this state." ( *Dickerman* v. *Abrahams*, 21 *Barb.*, 551 ; *Colvin* v. *Currier*, above cited ; *Goodall* v. *McAdam and wife*, 14 *How. Pr. R.*, 385.) In the latter case the wife had united with her husband in signing a bond for the payment of money. The action was brought for the purpose of charging the payment of the bond upon the separate estate of the wife. After a pretty full examination of the authorities on the subject, the conclusion of Mr. Justice HOFFMAN is, that where a note or bond is signed by the husband and wife, in the absence of any evidence to show that it was given for the benefit of the wife, the legal inference is that it was for the debt of the husband, and the separate

estate of the wife will not be charged. So, also, in *The North American Coal Company* v. *Dyett* (7 *Paige*, 9), the Chancellor says: "The *feme covert* is, as to her separate estate, considered as a *feme sole*, and may, in person or by her legally authorized agent, bind such separate estate with the payment of debts contracted for the benefit of that estate, or for her own benefit upon its credit." (*Same Case upon appeal*, 20 *Wend.*, 570.)

·The rule thus uniformly asserted by the courts of this state is, in my judgment, more equitable and more in harmony with the policy of the law which allows a married woman to hold and dispose of her property independently of her husband than the rule which has been adopted by the Supreme Court in this case. It is simply a rule of evidence. All agree that when the wife has expressly charged the payment of a debt upon her separate estate, whether it be her own debt or the debt of another, such charge is valid and will be enforced. But to hold that the mere fact of her engaging to pay money, without regard to the question whether such engagement was for her own benefit or that of her estate, is sufficient evidence of an intention to charge such payment upon her separate estate, would, in many instances, defeat the very object of allowing her to hold a separate estate. Indeed, there is much to recommend the practice, which has been adopted in some of the states, of looking into the circumstances of the case sufficiently to see that the wife will suffer no injustice before allowing a charge upon her separate estate to be enforced. (*Maywood* v. *Johnson*, 1 *Hill's Ch. R.*, 228.) In this case it was held that the court would inquire into the propriety of an express charge, and not allow the wife to charge her estate by her own mere act and will, without evidence that it was necessary, or at least proper; and in *Reid* v. *Lamar* (1 *Strofhart's Eq.*, 27), it was held that where property was settled upon a wife to be at her "full and free disposal," it was not to be charged with a note given by her with her husband.

The object of settlements, and the other arrangements which were resorted to for the purpose of securing to the wife a separate estate, was " to protect her weakness against the husband's power, and provide a maintenance against his dissipation." So, too, the legislature, when it declared that the property of the wife " shall not be subject to the disposal of her husband, nor be liable for his debts, and continue her sole and separate property as if she were a single female," intended, so far as it could be done by legislation, to protect her against the improvidence and misfortunes of her husband. At the common law, the power of the husband over her estate as well as her person was almost unlimited. By this statute, and before by settlements and other contrivances which were sanctioned by a court of equity, the wife is enabled to enjoy her own property independently of her husband.

This right of enjoyment includes the right of disposition. Having this power, she, of course, has the power to charge the estate with the payment of her debts. When she does this of her own free will, uninfluenced by any unfair practices, however injudicious or improvident the act, the charge must be enforced. But when her intention to create such a charge has not been expressed, and there is no direct evidence of such intention, the mere fact that the creditor is able to present a note or other obligation bearing her signature as well as that of her husband, ought not—in view of the policy of the law under which she holds her property, and her position as a wife, liable to be controlled by influences which it may be impossible to detect—to be regarded as sufficient evidence to justify the inference that it was her voluntary intention to charge the payment of the debt upon her own separate property. I think that in such a case, the equitable rule is that which has been invariably adopted in this state, which is, that where the intention to create the charge has not been expressed, and can only be implied from the fact that she has become indebted, either individually or

jointly with her husband, it must appear that the debt was contracted for the benefit of her separate estate, or for her own benefit upon the credit of her estate, before the estate can be charged with its payment.

In the case before us there is an entire absence of any such proof. Indeed, the contrary is proved. Instead of being the debt of the wife, it is proved to be the debt of the husband. There is no evidence that the wife consented to have the payment of the note charged upon her separate estate, except such as is derivable from the fact that her signature is found upon the note. Under what circumstances, or upon what representations, or by what influences, she was induced to sign the note does not appear. I am of opinion that such a state of facts is not sufficient evidence of an intention, on the part of the wife, that the payment note should be charged upon her separate estate.

The judgment of the Supreme Court, therefore, should be reversed and a new trial granted, with costs to abide the event.

STRONG, J., expressed no opinion; DENIO and ROOSEVELT, Js., dissented.

Judgment reversed and new trial ordered.