## LEDLIE vs. VROOMAN.

A married woman, having a separate estate in lands, but not in the rents and profits thereof, not conducting any business on her own account, cannot charge such separate estate by a parol promise to pay the debt of her husband, where her separate estate has received no benefit on account of the contracting of the debt, and will not be benefited by the payment of the debt.

THIS is an action brought against the defendant, as a married woman, to recover two sums of money upon her promise to pay the same, and to have the amount decreed to be a lien and charge against her separate property.

*Geo. Smith*, for the plaintiff.

*J. H. Cook*, for the defendant.

POTTER, J. This case comes before the court upon the report of a referee, appointed to take and report the evidence. The plaintiff takes title to the demands by purchase, under an order made at a special term, on the application of the assignees of one William Baker, who made a voluntary assignment to them. The order purports to give authority to sell the assets of Baker, which assets included the claim in suit. By what authority the court made such an order, or how they obtained jurisdiction to make the order, is not shown. If no suit was pending in which it was made, the order is a nullity.

We leave that point for the present, and proceed to examine the case upon its merits; assuming that authority has been given. The evidence shows that the defendant is a married woman, the wife of Alexander Vrooman, of Canajoharie, Montgomery county. That she was the owner of a separate real estate, held in her own name and right; that her title to it was obtained prior to her marriage; and that she was married prior to the year 1848. She had no personal estate when married. There is no evidence of her being now

the owner of personal estate liable to execution. She resides with her husband, who occupies with her her real estate, except certain portions which it would seem is rented to tenants. The real estate is managed by her husband; she does not carry on or conduct business in her own name. As to the above facts there is no conflict of evidence. The evidence is (by William Baker, the assignor of the claim) to the effect that in May, 1859, Alexander Vrooman, the husband of the defendant, went to Baker and said there was an execution against his property; that he could not get the money; and that his wife, the defendant, had sent him, to him (Baker) to know if he would let her have the money to pay the execution; and that Baker let him have it, to the amount of $101.87. That in July following Vrooman, the husband, came again and said that the sheriff had advertised his property unknown to him, and his wife, the defendant, wanted him (Baker) to come up there immediately; that Baker went and saw the defendant; she asked him if he could arrange the debt upon which the sale was then about to take place, the execution being in the hands of Bromley, deputy sheriff, now deceased. Baker, at first, told her he had not the money, and promised to see Bromley, to get a few days time; Bromley refused to wait, by order of the plaintiff in the execution. Baker returned and told the defendant, who again asked Baker to raise the money in some way and pay the execution. Baker then told her he had already paid for her $101.87. She replied, "that she knew that, and that he had been very kind to her; and that if he (Baker) would raise this, she would pay both as soon as she could get her rents, or sell her farm; and also, if he would pay this debt, she would pay him the first money she got." Bromley, the deputy sheriff, advised her that to keep off other executions, the property had better be sold and bid off for her; she assented, and the sale took place. Baker bid in the property and paid the amount of the execution, and left the property on the farm. Except that the property was sold and left on

the farm, which is not disputed, every part and portion of the above evidence is positively contradicted by the defendant; especially as to her sending for Baker, and as to the promise to pay. The defendant adds, by way of additional evidence, that she did not receive the crops, nor rents of leases given for the lands rented; that she signed leases, but her husband managed the estate. This evidence of managing the estate is uncontradicted. In relation to all the testimony in conflict, except the promises of the defendant to pay, there is other evidence on the part of the plaintiff corroborating the testimony of Baker; and on the part of the defendant, there is the evidence of a statement made by Baker of the state of accounts; showing that a mortgage had been given by the defendant's husband to Baker, to secure demands against him, which are included in the demands in suit, as a debt against the defendant's husband. A question of law arises here, which we may first examine, viz., whether the plaintiff would be entitled to the relief demanded, if we assume the evidence on his part to stand uncontradicted. 1st. The debts in question paid by the plaintiff's assignor were not the defendant's debts; nor was she, except from her promise, bound to pay them, but they were the debts of her husband. 2d. Her separate property had received no benefit on account of contracting the debts so paid; nor did the evidence show that its payment benefited her said separate estate. 3d. No written agreement is proved, showing in itself that the defendant intended to charge her separate estate. 4th. The moneys paid by Baker were not shown to have gone to the direct benefit of the defendant's separate estate.

The defendant was not conducting any kind of business in her own name, or on her own account. True, there is no evidence in the case of the birth of issue of the defendant and her husband; and the marriage was prior to the acts of 1848 and 1849, in relation to the estates of married women; still this gave the husband the right to the rents and profits

of her real estate during coverture. (10 *Mass. R.* 263. *Co. Lit.* 351. 2 *Black. Com.* 433. 28 *Barb.* 362.) So whether there was or not issue born, the husband of the defendant had the rents and profits, by law, of her real estate. She had no separate estate in the rents thereof to apply in payment of the liability, which she promised to pay therefrom. If Baker relied on this promise, it was the promise of the defendant to pay the debts of another person, out of another person's property, and not out of her own. This would not be a valid promise in law, or a promise to charge her separate estate, and if the property bid in by Baker for her, had been paid for by her out of the rents and profits of her lands, it would have been paid for with her husband's money, and the property so purchased would, as a consequence, still have been his property, and could not in law have become hers. What is there then, in the evidence, that shows the intent by the defendant to create an express charge upon her separate estate? It could not be a charge upon her personal estate, for she had none; and being a married woman, her promise to pay for property purchased to create a personal estate would be void. Her title to the real estate was a legal one; it was a reversion, contingent upon her outliving her husband, descendible to her heirs in case her husband survived her. The acts of 1848 and 1849 had no effect upon this estate. (*Yale* v. *Dederer*, 18 *N. Y. Rep.* 265.) The disability of coverture prevented her from disposing of this estate directly, even by deed, except in conjunction with her husband. How then could she create a lien upon it, by parol, which by indirection might take it from her, or prevent its descending to her heirs, by a mere promise to become surety, or to pay a debt of another, the payment of which could not benefit her separate estate? Her promissory note, or other contract even under seal, for such purpose, would be void at law. The failure to show that this contract was for the benefit of her separate estate, and the doubtful evidence expressly contradicted, at that, of a

Ledlie *v.* Vrooman.

promise to pay when she sold her farm; an act that she could only perform in conjunction with her husband, is too weak to sustain the case. Courts of *equity* do indeed allow married women, whose separate estates have been benefited, to charge them, and enforce the charge to the extent of such benefit, based on a desire by the court to do justice, and compel equity, but the debt of another, which has not so benefited her estate, I think can only be made a lien upon a legal estate by virtue of some written agreement, in a form that will reach and bind real estate. No promise of a *man,* orally made, will bind *his* real estate; why should not the oral promise of a woman have as much protection? The case of *Yale* v. *Dederer,* (18 *N. Y. Rep.* 265, *same case, in* 22 *id.* 450,) and the cases cited therein, I think, controls this case. The defendant has neither made a separate instrument binding her separate estate to pay a debt *not* beneficial to her estate, nor has she created an equitable charge upon it by pledging payment from it of a debt which is beneficial. It is urged that the modern spirit of legislation evinces a desire and intent to give to married women more absolute control over their separate estates than formerly. This is doubtless true, so far as relates to their estates acquired in a certain way, after those acts took effect, and so far as such control will *protect* their estates; but what is claimed in this case would hardly be a *protection* to them; on the contrary it would open a door by which worthless, insolvent and spend-thrift husbands, who perhaps exercise as much control over the minds, the fears and the apprehensions of their wives as better disposed husbands could, and thus would control their estates, and thus might *exhaust* the separate estates of their wives by *their* improvidence. The protection of the disability of coverture, therefore, is still the best protection for them in this respect. This disability of coverture has not been removed by this modern legislation; certainly not as to estates previously acquired. If this view of the law is sound, we need not enter upon the labor of deciding upon the con-

flicting evidence in this case. Taking it in its strongest bearing for the plaintiff, the case is not made out. The plaintiff would be permitted to have the case sent back to supply the defect of authority as to the power to make the order to sell the assets, if the law would still allow him to have judgment; but as it now appears this is unnecessary. The complaint must therefore be dismissed.

[Schenectady Special Term, July 6, 1863. *Potter*, Justice.]