Shorter *v.* Nelson.

---

HEMAN S. SHORTER and another, Respondents, *v.* MARGARET H. NELSON, Appellant.

(GENERAL TERM, FOURTH DEPARTMENT, FEBRUARY, 1871.)

A married woman may not charge her separate estate with liability from which it derives no benefit, without a written instrument expressing such an intention.

A husband, acting as general agent with reference to his wife's separate real property, informed the plaintiff of her ownership of separate estate, and induced him to credit her with goods and services for his (the husband's) individual benefit. — *Held*, that the wife's estate was not charged, and that this was so notwithstanding the plaintiff had, while

Shorter *v.* Nelson.

furnishing the goods, been told by the wife that they were for her, and should be paid for out of her separate estate.

THIS was an appeal by the defendant from a judgment entered in favor of the plaintiff upon the report of a referee. The facts are stated in the opinion of the court.

*Angel & Finch*, for the appellant, cited *White* v. *Story* (43 Barb., 124); *Manchester* v. *Sahler* (47 id., 155); *Yale* v. *Dederer* (22 N. Y., 450); *Ledlie* v. *Vrooman* (41 Barb., 109).

*E. D. Northrup*, for the respondents, cited *Yale* v. *Dederer* (18 N. Y., 265, 281); 22 id., 450; *Owen* v. *Cawley* (36 id., 600); 40 id., 62; *Anthony* v. *Smith* (4 Bosw., 503); 2 Story Eq. Jur., §§ 1396, 1497, note 2, 1399, note *a*, note 3; also id., §§ 1400, 1401; *Corn Exchange Co.* v. *Babcock* (42 N. Y., 613); *Fowler* v. *Seaman* (40 id., 592); *Palen* v. *Lent* (5 Bosw., 713); *Bowdoin* v. *Coleman* (3 Abb., 431); 17 id., 6; Laws, N. Y., 1848, chap. 200, §§ 2, 3; id., 1849, chap. 375, § 1; id., 1860, chap. 90, §§ 1, 2, 3, 7; id., 1862, chap. 172, §§ 1, 3.

Present — MULLIN, P. J.; JOHNSON and TALCOTT, JJ.

By the Court — MULLIN, P. J. The defendant, Mrs. Nelson, owned a farm in the town of Great Valley, Cattaraugus county, on which herself and her family resided. Her husband, in the fall of 1867, had a contract with one Bliss to get to the mill a quantity of logs, and to saw the same into lumber. To fulfill this contract he had to employ teams, &c. He had very little means of his own, and he, therefore, applied to the plaintiffs to let his wife have such goods as she should want, and she would pay for them out of her property. He said she owned a farm, worth a great deal more than the price of the goods would be.

The plaintiffs consented to let Mrs. Nelson have the goods, and the goods were purchased from time to time and received by the husband, or upon orders drawn by him in the name of

the wife, and applied to pay for fulfilling the lumber contract above mentioned.

The husband had acted as the general agent of the wife, in managing her farm. But a small part of the goods was applied to the use of the wife.

While the husband was receiving the goods, one of the plaintiffs called on Mrs. Nelson, and inquired of her if she had authorized the purchase of the goods, and she said they were purchased for her by her husband, as her agent, and she said they would be paid for out of her separate estate.

The wife denies that she ever made the statement attributed to her, or ever knew of the purchase in her name, until called on by the plaintiffs, as above stated. She says that, being afraid that her husband might involve her by purchasing in her name, she had protested against it.

The referee finds that the husband was agent, and that she had authorized the purchase of the goods, and had charged them on her separate estate.

It is quite certain that the goods were not purchased for, or applied to, the separate estate. That estate is not liable for the price, unless it was competent for her to charge it upon that estate, by mere words, expressive of such purpose, without writing, or unless she is estopped from alleging that they were not for the benefit of her separate estate by reason of the representation of the husband when the contract for the purchase was made, and which representation she subsequently adopted when called on by the plaintiffs.

Married women, who do not own property in their own right, or carry on some trade or business, are not released from the restrictions imposed on them by the common-law as to making contracts which bind them personally. When they do own separate property, or carry on business in their own right, they are authorized to sell or encumber the same, in the same manner and to the same extent that they could do were they *femes sole*.

It follows from this, that, when they purchase property or employ labor for the benefit of their separate estate, they are

liable therefor as if they were sole.   And a judgment recovered for the value of such property or service may be enforced against her separate estate precisely as it would be against the property of a *feme sole.*

But where the contract does not concern the separate estate, the married woman must, in the contract, manifest her intention to charge the debt or claim, sought to be enforced upon her separate estate, upon such estate.   (*Yale* v. *Dederer,* 18 N. Y., 265; *S. C.,* 22 id., 450; *Corn Exchange Bank* v. *Babcock,* 42 id., 613.)

When the indebtedness sought to be enforced was incurred by her as surety for a third person, the contract, prior to the passage of chapter 464 of the Laws of 1863, repealing certain clauses of the statute of frauds, which required certain contracts to answer for the debt of another to be in writing, and the writing to express the consideration, it was indispensable that the contract of the married woman should be in writing, and, therefore, the declaration of the intention to charge her separate estate must also be in writing.

The provisions of the Revised Statutes, as amended by chapter 464, no longer require the agreement to answer for the debt of another to express the consideration; but it must still be in writing, and subscribed by the party to be charged.

But contracts of suretyship, within the provisions of the statute of frauds, are not the only contracts which a married woman may make, and which do not relate to her separate estate.

She may become primarily liable for property purchased by and actually delivered to another person; and she may purchase presents for her friends, for none of which can her husband be made liable.   Can she, by words only, charge these upon her separate estate?

No case has been found by me sustaining any such doctrine. If a charge can be made by mere words, all restrictions upon her are removed, and her power to bind her separate estate is unlimited.   Why require the formula of words expressive of an intent to charge her separate estate, when it was understood

Shorter *v.* Nelson.

at the time of trade that she made the purchase, or incurred the liability, on her own responsibility exclusively, and had property of her own to satisfy it? She must be understood, under such circumstances, as intending to charge her separate estate with the liability incurred, as, if not done, the person trusting her is defrauded.

This was the ground on which the General Term in the sixth district endeavored to get over the decision of the Court of Appeals in *Yale* v. *Dederer* (18 N. Y., 265).

But the Court of Appeals reversed the judgment of the General Term, reasserting, in the most emphatic terms, that, in order to charge her separate estate for a debt incurred for the benefit of a third person, she must manifest such intention in the contract itself, and not elsewhere or otherwise.

If a writing is required, an additional protection will be afforded to her against perjury in the manufacture of charges on her property. If mere words are enough to create the charge, the temptation will be very great to torture her language and acts into the declaration of an intention to subject her separate property to the payment of the debts of insolvent or worthless husbands or children. A charge on real estate should never be permitted to be created otherwise than by writing, unless done by a court of equity, and in order to protect innocent parties against fraud. The declaration of intention, in these cases, is to have the force and effect of mortgages. A mortgage lien cannot be created by words only, unless under very peculiar circumstances.

Judgment reversed, and new trial ordered; costs to abide the event.