### Spraker *v.* Dow.

(*Supreme Court, General Term, Third Department.* May 17, 1888.)

1. Wills—Contract to Make—Consideration.

After plaintiff had become a member of her grandfather's family under an agreement between her father and her grandfather, her grandmother promised that if plaintiff was a good girl, and stayed till she married or was 21 years old, the grandmother would give her $250 in her will. *Held,* that the promise was gratuitous, and, being in no manner connected with any business which she conducted apart from her husband, did not create any charge which could be enforced against her separate estate.

2. Same—Contract to Make—Failure of Consideration.

In such case, plaintiff having left her grandparents before she was 21 years old, and a week thereafter married without their knowledge, she violated her part of the agreement, and there was a failure of the condition on which the promise rested.

Appeal from judgment on report of referee.

Action by Ella Spraker against Daniel J. Dow, executor, etc., of Sarah Hilton, deceased, to recover the amount of legacy which it was alleged the testatrix had promised to leave plaintiff. Report and judgment for defendant, and plaintiff appeals.

Argued before Learned, P. J., and Landon and Ingalls, JJ.

*L. W. Baxter,* for appellant. *W. C. Lamont,* for respondent.

Ingalls, J. We have carefully examined this case, and we are convinced that the decision of the learned referee is correct in regard to the facts and the law. In the spring of 1874 the plaintiff became a member of the family of her grandfather, Philip Hilton, as a domestic; being then about 12 years of age. She went then, pursuant to a parol agreement made between Philip Hilton and Joseph Blythe, the father of the plaintiff, the terms of which were that Philip Hilton was to provide the plaintiff with board, clothing, and schooling, and if she remained there until she married, or became 21 years of age, and was a good girl, and obedient, she was to have a little better done for her. Such seems to have been substantially the arrangement under which she entered the family of her grandparents. Philip Hilton was, at the time, a farmer in comfortable circumstances, and managed his farm, transacted his business, and provided for his family. His wife, Sarah Hilton, the testatrix, managed the household affairs, but beyond that seems to have had no control. She possessed a separate estate of about $4,000, which she managed. The parents of the plaintiff were in indigent circumstances, and probably unable to provide for the plaintiff. The plaintiff remained in the family of her grandparents between three and four years, when she left, and went to her father's, and remained there one week, and then, according to the evidence of her father, left on foot; and, without informing her parents of her purpose in leaving, contracted a marriage with a man by the name of Harvey Spraker,

who was considerably her senior, of intemperate habits, and without property. The grandparents had no knowledge of her intended marriage when she left them, and were greatly disappointed and incensed by her conduct in that respect. The plaintiff seems to have been industrious and faithful during her service; and had she remained in the family until she became 21 years of age, or had married with the approbation of her grandparents, doubtless she would have been suitably provided for by them. As it was, she received provisions and household furniture to aid her in keeping house. By this action the plaintiff sought to recover against the estate of her grandmother, Sarah Hilton, the sum of $250 upon an alleged promise which is stated in her complaint as follows: "(5) That after the plaintiff had entered the service of said deceased as aforesaid, and while continuing therein, the said deceased promised and agreed to and with said plaintiff that if the plaintiff would stay with and remain in the service of the deceased, as aforesaid, she, the said Sarah Hilton, deceased, would give her, the said plaintiff, the sum of two hundred and fifty dollars in her, said deceased's, will; that she, said deceased, would make and incorporate in her last will and testament a provision or legacy of the sum of two hundred and fifty dollars to be paid to said plaintiff as a consideration and payment for the said services plaintiff had performed for her, the said deceased, and for the services to be performed by said plaintiff as aforesaid, until said plaintiff should get married, or until she arrived at the age of twenty-one years; and that she, said deceased, would direct the payment of said sum from out of the estate of said deceased, as aforesaid." This pretended agreement between the plaintiff and Sarah Hilton was not sought to be established by proof of any special agreement between them by any person who was present at the making thereof, but by sundry declarations claimed to have been made by Sarah Hilton to third parties during the life of her husband, Philip Hilton. The witness Nicholas Strobeck stated a declaration of Sarah Hilton, as follows: "Said she was a good girl, and she would do well by her if she stayed till she got married, or till she was twenty-one." The witness Jeremiah Hynds testified: "Mrs. Hilton said she would do well by plaintiff." The witness Benjamin Famming testified: "Heard Mrs. Hilton say that if plaintiff was a good girl, and stayed with her until she was married, or twenty-one years old, she would do well by her." Judson Kaiker, another witness, states that he had a conversation with Mrs. Hilton in which "she said she had agreed, if plaintiff stayed with her till she got marred, to give her two hundred and fifty dollars." Upon his cross-examination the witness stated: "She said she was to give her two hundred and fifty dollars in her will, when she got married, and, being she had married that drunken loafer, she would not get a thing." The husband of plaintiff was examined as a witness on her behalf, and stated a conversation with Sarah Hilton. "She said she told plaintiff she would make her two hundred and fifty dollars in her will if plaintiff would stay until she got married, or until she became twenty-one years old." The father and mother of the plaintiff were examined as witnesses, and their evidence furnishes no support to any such claim.

We have referred to the testimony of the several witnesses with the view to ascertain upon what evidence the pretended agreement rested, and under what circumstances the declarations of Sarah Hilton were claimed to have been made, and to discover whether and to what extent such statements were, in language or substance, alike and consistent. We are convinced that they are too loose, conflicting, and unreliable to furnish the elements of a valid agreement, and to constitute the basis of a legal cause of action against the estate of a deceased person. The declarations thus proved seem rather in the nature of gratuitous expressions, made by Mrs. Hilton, which obviously proceeded from no definite or fixed purpose in her mind, and without the remotest intention of creating a legal liability. Whatever she promised was purely voluntary, as she was under no legal obligation to compensate the

plaintiff for her services, not having been a party to the original agreement under which the plaintiff entered the family as a domestic. Mrs. Hilton doubtless entertained kindly feelings towards the plaintiff while she remained in the family; and if she had not departed in the manner she did; and had not contracted a marriage so distasteful to her, and apparently so inappropriate and improvident, it is quite probable that she would have provided, to some extent, for the plaintiff, by her will or otherwise. Such provision would have been voluntary and gratuitous, rather than the performance of a legal obligation.

The referee, at folio 22 of the case, has made the following finding: "*Eleventh.* That after the plaintiff had commenced the domestic service under and in pursuance of the agreement and arrangement between her father and grandfather, and continued the service, her grandfather also fully performing his part of the terms thereof for more than the one-half of the entire time of her service, the said Sarah Hilton told her if she was a good girl, and stayed till she got married or twenty-one years of age, she would give her $250 in her will." The referee further finds the following: "*Ninth.* That she did not stay and live with her grandparents till she got married, or till she was twenty-one years of age, but left one week before such marriage, and never returned to such service." This latter finding of the referee is sustained by the evidence as to the letter and spirit of the alleged provision in regard to the condition upon which the contemplated testamentary provision was made to depend. The plaintiff did leave the service without the permission of her grandparents, and without informing them of her intended departure, or the purpose thereof. One week intervened between the time she left and the marriage; so that there was strictly a violation of the agreement on her part, and a failure of the condition upon which the alleged promise rested. But, beyond that, and what was evidently regarded by Mrs. Hilton of far greater consequence, the plaintiff forfeited her confidence and respect by the manner she abandoned the family, and by the unfortunate marriage which she contracted. The evidence has produced upon our mind the conviction that this claim is the result of an after-thought on the part of the plaintiff, and is rather experimental than otherwise. Claims of the nature of the one here asserted against the estates of deceased persons, based upon no agreement clearly expressed or satisfactorily established by reliable evidence, should be carefully scrutinized by courts, to the end that speculative or fictitious claims should not be encouraged. Obviously, it would not be difficult for a party, moved by a selfish motive, to gather up loose expressions made by a person, while living, to third parties, who possibly misapprehended what was said, and weave them into such a form as to constitute the elements of a cause of action against the estate of such person after death.

Again, Sarah Hilton was a married woman, residing with her husband, and being supported by him at the time the pretended agreement was made by her with the plaintiff, and during the period the latter rendered the service in the family under the agreement between Philip Hilton and the father of the plaintiff, who was, during her infancy, entitled to her earnings, and liable for her support. There is no evidence, which we discover, to the effect that the plaintiff manifested unwillingness to become a member of the family of her grandparents, or to continue there, or that there was any change in the nature of her service. The promise of Sarah Hilton, under the circumstances, was gratuitous, without consideration, and in no manner connected with any business which she conducted separate from her husband, and did not in terms, or by necessary implication, create a charge upon her separate estate. Such a promise, made under such a state of facts, created no legal liability. *Eisenlord* v. *Snyder*, 71 N. Y. 45; *Yale* v. *Dederer*, 22 N. Y. 450, 18 N. Y. 265; *Linderman* v. *Farquharson*, 101 N. Y. 434, 5 N. E. Rep. 67. We fully recognize the rule established by a class of adjudications, to the effect that a

valid contract may be made by a party competent to contract, and based upon an adequate consideration, to compensate for services rendered, or to be rendered, by a testamentary provision; and, in default of making such provision, an action may be maintained by the party who rendered the service under such an expectation, and a recovery may be had to compensate for such service. That, however, is not this case, as it is lacking in several of the required elements to constitute such a cause of action. The judgment must be affirmed, with costs.

LEARNED, P. J., and LANDON, J., concur.