<span>AKERLY v. VILAS et al.</span>

---

## AKERLY VS. VILAS and another.

Where a bond and mortgage were given in consideration of a deed for certain lots, made at the time, and of a conveyance of certain lands and a transfer of certain certificates of stock in a land company, afterwards to be executed, a refusal of the grantor to convey the lands and transfer the certificates as agreed, and the fact that he had no title to part of the lots described in the deed, so that the grantee could not lawfully take posession of them, constitute at least partial defenses or counter-claims, in an action to foreclose the mortgage.

An action was brought in a circuit court of this state, to foreclose a mortgage given to secure the bonds of the mortgagor, the plaintiff demanding in his complaint a personal judgment for the deficiency. The defendant filed an answer, setting up at least a partial failure of consideration ; after which the plaintiff, who was a citizen of another state, commenced an action upon the bonds against the mortgagor in the United States court for the district of Wisconsin. *Held*, that as a partial or total failure of consideration of the bonds would be no defense to the action at law in the United States court, the circuit court in which the first named action was pending might rightfully grant an injunction, restraining the plaintiff from proceeding further in the action in the United States court.

A court of equity, which first acquires jurisdiction of a cause, will retain it for a final determination of the rights of the parties, and, where the ends of justice require it, may restrain the plaintiff from suing or proceeding elsewhere.

·Upon a bill to rescind an executory agreement for the sale of land, on the ground that the vendor is *unable* to make a good title, if it appears at the time of the decree that he is able to do so, the plaintiff will be compelled to accept it; but where the contract is past and executed so far as the purchaser is· concerned, and the vendor sues in a court of this state for the purchase money, the defendant may show, as a partial or total failure of consideration, that the plaintiff refused to make the necessary conveyances and transfers at the time fixed by the agreement, and will not be compelled to accept them at the time of the hearing or decree, any more than if the consideration had been the transfer of personal property, or the performance of any other act which the plaintiff wrongfully refused.

APPEAL from the Circuit Court for *Dane* County.

*Akerly* brought an action in the Dane circuit court in September, 1860, against *L. B. Vilas and wife*, to foreclose a mortgage given by them in September, 1855, to said *Akerly* and Louisa S. Lord, to secure the payment of certain bonds made by said *Vilas*. The complaint alleged that the plaintiff was the owner of the bonds and mortgage, and demanded a judgment against *L. B. Vilas* for any deficiency which might remain after a sale of the mortgaged premises. *L. B. Vilas* filed an answer, setting up several grounds of defense and counter claim. The first stated, in substance, that in August, 1855, he negotiated with the plaintiff and Mrs. Louisa S. Lord, in the state of New York, for the purchase of certain lots and blocks in Prairie du Chien, and 160 acres in Grant county, and 80 acres in Green county in this state, and 100 shares in the undivided property of Prairie du Chien Land Company No. 1, and 150 shares in the stock of Prairie du Chien Land Company No. 2, which they claimed to own as tenants in common, and that the plaintiff agreed to sell said property for the gross sum of $13,000, subject to the assent of Mrs. Louisa S. Lord; that said Louisa was unwilling at that time to assent to said agreement, and it was not then consummated; that the plaintiff and Mrs. Lord entrusted the final decision of the matter to Frederick W. Lord (her husband), who was to come to Wisconsin to ascertain more fully the value of said property; and to enable him to consummate the sale, should he deem it advisable, the plaintiff and Mrs. Lord were to execute powers of attorney authorizing him to dispose of and convey said property; that said Frederick came to Wisconsin, and in September, 1855, agreed that the

plaintiff and Mrs. Lord should convey to this defendant all of said property for the sum above mentioned as one entire transaction, no specific price being mentioned for any separate parcel of it; that when said Frederick was about to execute the necessary papers to perfect the sale and transfer of said property, it was ascertained that he had not full power to execute the necessary conveyances and transfers, but that he only held powers of attorney purporting to be executed by the plaintiff and Mrs. Lord, empowering him to sell and convey the plaintiff's land in Prairie du Chien and Mrs. Lord's lands in Wisconsin; but it being supposed that the plaintiff and Mrs. Lord would perfect said sale and transfer, said Frederick, as their attorney in fact, and for himself as the husband of Mrs. Lord, executed a deed in their and his own name, purporting to convey to said defendant said lots and blocks in Prairie du Chien, and 100 shares in the undivided property of Prairie du Chien Land Company No. 1, and 150 shares in the property of Prairie du Chien Land Company No. 2, and generally all the lots, blocks and property of the grantors in Prairie du Chien; and it was agreed that a deed should be executed by the plaintiff and Mrs. Lord (the said Frederick joining therein) conveying to this defendant the said land in Grant and Green counties, and that a proper transfer should be made by them of the certificates representing the shares in the property of said land companies which the plaintiff and Mrs. Lord claimed to own, all of which were to be transmitted to the defendant by the 1st of October then next; and in consideration of the conveyance then executed by said Frederick as aforesaid, 'and of the conveyances and transfers so to be made by the plaintiff and Mrs. Lord, the defendant executed and delivered to said Frederick the bonds and mortgage described in the complaint, " and never delivered the same or caused them to be delivered to the plaintiff or Mrs. Lord, or to any other person, or in any other manner whatever;" that the plaintiff and Mrs. Lord refused to convey to the defendant the lands in Grant and Green counties, or to transfer to him said certificates of stock, and he has never received any conveyance or transfer of the same or any part thereof, but on the contrary the

plaintiff refused in any manner to ratify said sale, or to accept said bonds and mortgage, but repudiated the whole transaction, and had, until a short time before the commencement of this action, disclaimed any interest in said bonds or mortgage; that in September, 1856, the plaintiff commenced an action in the U. S. Court for the district of Wisconsin to set aside said deed as unauthorized by him or Mrs. Lord, and prosecuted it until shortly before the commencement of this action, when it was abandoned, and also resisted a partition of the lands belonging to said Land Company No. 2, claiming to be still the owner of 75 shares of stock therein (being the same which the defendant had attempted to purchase); that said Prairie du Chien Land Companies Nos. 1 and 2 were joint stock companies, whose property was vested in trustees, and the shares therein represented by certificates of stock transferable by assignment and delivery, the possession and holding of which was an indispensable requisite to the having or enjoying any interest or property therein; that the property represented by said certificates, together with said Grant and Green county lands, formed a large part of the consideration of said bonds and mortgage; that for any purpose except as city or village lots, the whole of the Prairie du Chien property which the defendant proposed to purchase would not have been worth over $3000, and his only object in attempting to purchase it was that he might sell it in parcels after an anticipated rise in value by the prospective location of a railroad depot and buildings in their immediate vicinity; that in the year 1856, the anticipated advance in value of said property had taken place, and the property could have been sold in parcels from time to time for from $100,000 to $150,000, and said value continued substantially the same until the fall of 1857, when it declined, and in about a year afterwards the demand for said lands for town and city purposes had for the most part ceased; that the plaintiff prosecuted his said suit in the district court, to set aside said deed, from September, 1856, until the spring of 1859, and in consequence thereof and of his refusal to perfect said conveyance and sale, the defendant was unable to sell any of said property, except a few of the lots embraced in the deed made by

said Frederick, which were sold while the defendant had hopes that the sale to him would be perfected, and before purchasers had learned the situation of the title; that toward the close of the litigation commenced by said plaintiff, all opportunities to make sale of said lands as village property having been lost by the conduct of the plaintiff, the defendant became willing and offered to give up all claim to any of said purchase on equitable terms, but the plaintiff did not accede to such proposal, and soon after discontinued his said suit; and the defendant was still ready to give up all claim, if any he might otherwise have, under said deed, on such terms as might be just. Wherefore he denied that the bonds and mortgage were binding upon him, or that there was any sum due thereon.

The second special defense states substantially the same facts as the first, and alleges also that the lands in Prairie du. Chien were conveyed to the defendant by the plaintiff and Louisa S. Lord by their agent, Frederick Lord, at the date of said bond and mortgage; that their deed of conveyance contained covenants of lawful seizin and of general warranty; that the plaintiff and Mrs. Lord were not well seized of the property which was represented by said certificates, and had no authority to convey the same as they undertook to do, and also that they had no title to or seizin of lots 3, 4, 5, 6, 7 and 8, in block 1, which were specifically described in said deed, and that the defendant could not lawfully take possession thereof; that the defendant was at great trouble and expense in his efforts to promote the growth of that part of Prairie du Chien in which the property he contracted to purchase from the plaintiff and Mrs. Lord was situate; that said plaintiff had no reasonable or probable cause for his action in the district court to set aside said conveyance executed by said Frederick Lord, but that the same was prosecuted maliciously and wrongfully, with the sole view of injuring the defendant; that said Frederick died in June, 1860, leaving the plaintiff the only person legally bound by the covenants in said deed, and that the defendant has suffered damages by said breaches of covenant and by the acts of the plaintiff in hostility to his title, to the amount of

$100,000. The other special defenses need not be stated. The answer was verified. In October, 1861, Vilas filed an affidavit stating that he had a good defense to the whole of the plaintiff's cause of action, and a valid counter-claim against him for a large amount, as he was advised by his counsel after a full and true statement of the whole of his case; that the plaintiff lived in the state of New York, and had not been in this state for the last seven years, and would not expose himself to the service of process in this state, as the affiant believed, and had no property in this state, except as appeared by the pleadings in said action, from which the amount of the defendant's claim might be made; that unless the subject matter of the affiant's answer should be determined in the action in which it was filed, he would be deprived of all opportunity to obtain a remedy therefor against the plaintiff; that on the 5th of said month of October, an action of debt upon the bonds secured by said mortgage had been commenced against him in the name of said *Akerly* and Louisa S. Lord, in the U. S. Court for the district of Wisconsin; that said *Akerly* is solely interested in said bonds, and said action is brought entirely for his benefit; that the counter-claims set up by the affiant in said action for malicious prosecution and slander of title are barred by the limitation laws of New York, and the affiant neglected to bring suit thereon in the state of New York because of the opportunity offered to put them in as counter-claims in said action; that said *Akerly* has not sufficient property which could be reached by ordinary process of law, to satisfy such judgment as he believes he is entitled to recover against him, and it is therefore necessary, in order to obtain the benefit of his claim, that it be set off against the demand of said *Akerly*, should he establish any in said action; that the affiant could not, for the reason before stated, obtain jurisdiction of the plaintiff's person in said district court, to maintain a suit on the equity side thereof, to cancel said bonds or mortgage, or obtain any other equitable relief, nor could all nor the principal matters embraced in said answer be interposed as a defense in said suit at law in the district court; that according to the rules of said district court, a judgment

can, and, unless prevented by injunction, he believes may be rendered against him at the term of said court to commence on the first Monday of November then next, and execution be issued thereon against his property for about $18,000.00; that the property mortgaged to secure said bonds is worth much more than their amount, and that he will be unjustly subjected to great expense and the danger of being obliged to pay an unjust claim then in litigation in said circuit court, unless that court should interfere by granting an injunction to stay said proceedings in the district court and to prevent the commencement of any other proceedings upon said bonds. Wherefore he prayed the circuit court to restrain the plaintiffs in said suit in the district court, their attorneys, &c. from prosecuting the same or commencing any other proceedings thereon, and from transferring said bond.

Upon this affidavit, the circuit judge allowed the injunction asked for. The plaintiff, upon the papers in said action and upon the affidavit of H. M. Finch, Esq., obtained an order to show cause why the injunction should not be dissolved. The affidavit of Mr. Finch stated that in the action of said *Akerly vs. Vilas and wife* in the Dane circuit court, said *Vilas* alone had answered; that the plaintiff had demurred to the answer of said *Vilas*, and that the demurrer had been noticed for argument; that said *Vilas* had appeared by his attorneys in the suit brought against him in the district court by said *Akerly* and Mrs. Lord, and had filed a plea to such suit under his oath, which still stood as a valid plea to said action; that by the rule and practice of said district court, said *Vilas* could, if he ought to have relief in a court of equity, file a bill in that court, and have the subpoena served upon the attorneys for the plaintiff, and obtain an injunction staying proceedings in said action of debt; and that the said district court had full and complete jurisdiction of said action and of the parties thereto.

Upon the hearing of the order to show cause, the defendant read the affidavit of one of his attorneys, which stated that the plea filed by *L. B. Vilas* in the action in the district court was not a plea to the merits, but in abatement only, setting up the pendency of said action in the Dane circuit court,

and alleging that it was brought for the same cause and sub-
ject matter for which said action in the district court was
brought, and that said plea was filed before the injunction
was served upon the plaintiff's attorneys, and that the day
of filing it was the last day on which it could be filed to pre-
vent said *Vilas* from being in default.—The circuit judge
made an order continuing the injunction. The plaintiff ex-
cepted and appealed.

*Finches, Lynde & Miller*, for appellant, argued that neither
the answer of *Vilas* nor his affidavit disclosed any reason for
an injunction restraining a suit at law. 1. One portion of
the answer shows that the bonds were never delivered to
*Akerly* or Mrs. Lord. This, if true, would be a complete de-
fense in the action at law upon the bonds. In such case
equity will not restrain the action at law by a preliminary
injunction. 7 Paige, 68; 11 id., 384. 2. In another part
of the answer the defendant alleges that he is ready and wil-
ling to give up all claim, if any he might otherwise have, on
such terms as may be just. This is a concession that he is
in possession of the lands. If so, he cannot rescind the con-
tract of sale. He alleges no fraud in the the sale, no mis-
representation or mistake. 5 Paige, 299; 5 Conn., 528; 8
Leigh, 658; 1 Rich. Ch., 404; 1 Smedes & Marsh. Ch., 611.
3. Nor is the answer so drawn that *Vilas* can claim compen-
sation. It says that the purchase of all the property was
one entire contract, but it nowhere alleges what is the value
of the Grant and Green county lands, or their value as com-
pared with the Prairie du Chien lands. The answer is an
attempt to set up a partial failure of consideration. This
cannot be done in a suit at law upon the bonds. 3 Camp.,
38; 14 East, 486; 5 Cow., 494; 9 id., 307; 2 Wheat., 13;
1 Ind., 382; 5 Blackf., 100, 541; 7 id., 55; 8 id., 38; 20
Johns., 134; 15 Wend., 518; 13 How. Pr. R., 460. 4. Nor
does the answer allege a defense good in equity. It nowhere
alleges fraud, concealment or that the appellant will not be
able to make the title. For aught that appears, *Akerly* can
now, or can upon the trial, obviate every defect of title com-
plained of. It is sufficient that he can make a good title at
*the time of the decree.* 1 Paige, 244; 6 Yerg., 36; 1 Smedes &

January Term, 1862.

AKERLY
v.
VILAS et al.

M. Ch., 376; 3 Cal., 558. 5. The first counter-claim is bad on demurrer. It sets out a deed with full covenants, executed by the appellant, Mrs. Lord and Frederick W. Lord. A suit could not be maintained against *Akerly* alone for a breach of the covenants in the deed, and the counter-claim is not a cause of action against him alone. Besides, the breach of covenant and malicious prosecution and slander of title are united in the same defense. This is a misjoinder which can be reached by demurrer. 7 How. Pr. R., 236; 4 id., 226; 5 Barb., 297; 2 Sandf., 269; 1 Seld., 14; 1 Duer, 670. None of these matters are in any way connected with the cause of action, and do not arise out of contract. All the other counterclaims are subject to this objection. 6. But we insist that the circuit court could not rightfully interfere with the cause pending in the district court, which had full jurisdiction of the subject matter and the parties. The federal courts discountenance any such interference with the process of state courts. 1 Kent's Com., 410 to 412; *McKim vs. Voorhies,* 7 Cranch, 279; *Rogers vs. City of Cincinnati,* 5 McLean, 337; *Meade vs. Merritt,* 2 Paige, 402; *Grant vs. Quick,* 5 Sandf., 612; *Burgess vs. Smith,* 2 Barb. Ch. R.,279; Harrington's Ch. R., 197; *Dederick vs. Hoysradt,* 4 How. Pr. R., 350; *Tarrant vs. Quackenbos,* 10 id., 241; *Phelan vs. Smith,* 8 Cal., 520; 1 Wash. C. C. R., 236; 4 Cranch, 179; 1 Hemphill, 25; 24 Barb., 154. 7. An injunction is only obtainable by a plaintiff. A defendant, as such, is not competent to move for one, unless his right to do so appears by the complaint. His only method of proceeding is, to serve a summons and complaint in the nature of a cross suit, and proceed therein as plaintiff. 1 Whittaker's Pr., 250; *Thursby vs. Mills,* 1 Code. Rep., 83.

*Wakeleys & Vilas,* for respondent:

The plaintiff having sued in the circuit court both on his mortgage and bonds in the same action, and the defendant having answered the whole case, the judgment of that court must necessarily determine the whole controversy. The suit is in effect a suit both at law and in equity, and is an exercise of the right which formerly existed, to proceed concurrently in both forms; hence the plaintiff had no right to

institute another suit in a court of law on the bonds alone. The circuit court, having obtained jurisdiction of the parties and of the whole subject matter in controversy, has power and ought to enjoin the plaintiff from proceeding in another court upon the same cause of action,—either in this or another country, or in a state or United States court. *Wharton vs. May,* 5 Vesey, 71 ; *Edgecumbe vs. Carpenter,* 1 Beavan, 171 ; *Booth vs. Leycester,* 1 Keen, 579 ; 3 Mylne & Craig, 461, S. C. ; *Wedderburn vs. Wedderburn,* 2 Beavan, 208 ; 4 Mylne & Craig, 585, S. C. ; *Mocher vs. Reed,* 1 Ball & Beatty, 318 ; *Portarlington vs. Soulby,* 3 Mylne & Keene, 104 ; 8 Eng. Ch., 298, S. C. ; *Bunbury vs. Bunbury,* 1 Beavan, 320 ; *Schoole vs. Sall,* 1 Schoales & Lef., 176 ; *Bell vs. O'Reilly,* 2 id., 430 ; *Wilson vs. Wetherherd,* 2 Merivale, 406 ; *Bushby vs. Munday,* 5 Mad. Ch., 184 ; *Gould vs. Spencer,* 5 Paige, 541, and cases cited ; *Ex parte Foster,* 2 Story, 131 (160) ; *Ex parte Christy,* 3 How., 292 (318 *et seq.*); *McLean vs. The Lafayette Bank,* 3 McLean, 185; *Blanchard vs. Stone,* 16 Vt., 234; *Conover vs. The City of New York,* 25 Barb., 513 ; Story's Eq. Jur., §§ 891, 899, 900, and cases cited. 2. When proceedings have been first commenced in the state court, and it has full jurisdiction of the parties and the subject matter, and one of the parties then wrongfully and unwarrantably attempts to transfer the cause to a federal court, commencing suit there on precisely the same matters already in issue in the state court, no rule of comity forbids the state court to enjoin the party from proceeding further in the federal court. It is a contempt of the court where the proceedings are first commenced, to institute another suit for the same matter in another court. *Blanchard vs. Stone, supra.* The injunction operates on the party, not on the court. 2 Story's Eq. Jur., § 875. 3. Even where the plaintiff had an undoubted right to sue both at law and in equity, on his bond and mortgage, the court of equity would enjoin him from proceeding at law, where, *as in this case,* there was an equitable defense. Story's Eq. Jur., §§ 875, 885, 886, 889 and 890 ; Willard's Eq. Jur., 374; *Schoole vs. Sall, supra.* 4. Chap. 128 of Revised Statutes does not by implication preclude a defendant from enjoining the plaintiff from doing any particular act

during the pendency of the suit. In the matter of *Hemiup*, 2 Paige Ch., 316, it was held, that where the court has obtained jurisdiction of the parties and subject matter, an injunction may issue without bill filed. And in the following cases, cited *supra*, the plaintiff was enjoined from suing in another court, simply on motion or suggestion of the defendant. *Edgecumbe vs. Carpenter; Booth vs. Leycester; Wedderburn vs. Wedderburn; Mocher vs. Reed; Schoole vs. Sall; Wilson vs. Wetherherd.*

*By the Court*, DIXON, C. J. The plaintiff was properly restrained from prosecuting his action at law on the bonds. The refusal to convey the lands in Green and Grant counties, the non-delivery of the certificates of stock, and the failure of title to a portion of the lots in Prairie du Chien, as set forth in the first and second defenses of the answer, constitute, if not complete, at least partial defenses or counter-claims to the cause of action stated in the complaint. They arise out of the same transaction, and are properly pleaded in this action. R. S., chap. 125, secs. 10, 11; *Walker v. Wilson*, 13 Wis., 522; *Hall v. Gale*, 14 id., 54.

To say nothing therefore of the other matters contained in those defenses, and of the third and fourth, to which the plaintiff's counsel so seriously object, and which they insist constitute no defense to the claim of the plaintiff, these must, for the purposes of this application, be deemed sufficient. For we are not judging the answer as upon demurrer or upon motion to strike out parts of it, or to make it more definite and certain. We look to see if, in any part, it contains a substantial defense to the whole or any part of the cause of action stated by the plaintiff. If it does, and the defense is of a nature to be unavailable to the defendant in the action at law upon the bonds, his right to the injunction is established, unless there be some reason peculiar to this case, which takes it out of the ordinary rules of courts of equity upon this subject. The presence of immaterial averments or irregularities in form, does not affect the question. Hence we do not inquire into them.

The district court of the United States proceeds according

to the course of the common law. However it might have been had the action upon the bonds been commenced in one of the courts of this state, which are governed by the Code (R. S., chap. 125, sec. 12), it is very clear that in the district court the partial or total failure of consideration constitutes no defense to the action at law. The authorities cited by the plaintiff's counsel are conclusive upon that question. The seal imports a consideration, which cannot be impeached except for illegality. Therefore the matters of defense contained in the answer, which are good in equity where no such technical barriers stand in the way of complete justice, would avail nothing in that suit. Here we have a solid foundation in equity for the order made by the circuit judge, and a very probable explanation of the plaintiff's motive in seeking to withdraw the litigation from the circuit and transfer it to the district court.

The general power of courts of equity whose jurisdiction has once attached, to restrain parties from commencing and prosecuting subsequent actions in other courts for the same object, is unquestioned. If any doubt should exist, it will be effectually dispelled by an examination of the cases cited by the counsel for the defendant. The defendant will be restrained at the instance of the plaintiff, and *vice versa.* The forum or jurisdiction in which the subsequent proceedings are taken, whether domestic or foreign, is immaterial. The injunction goes against the party and not the court or officer. The doctrine of the English courts is well settled, and we are unable to find any American decision to the contrary. The sole inquiry is, whether the ends of justice demand that the power should be exercised. If they do, the court first acquiring jurisdiction will retain the suit for a final determination of the rights of the parties, and restrain them from suing or proceeding elsewhere.

The only question here is, whether there is anything in the relations of the state and federal courts which should prevent the application of this general doctrine to a case like the present. Counsel for plaintiff insist that there is—that it will lead to troublesome and unnecessary conflicts, promote litigation, and violate the rules of comity and forbear-

January Term,
1862.

AKERLY
v.
VILAS et al.

ance which should be maintained between the two jurisdictions. We think differently. It seems to us that no question of conflict of jurisdiction is involved. This is implied from the nature of the power exercised. No attempt to control or regulate the action of the federal court or its officers is made. The process is directed to the parties litigating before the court from which it issues, and it becomes a mere question of the power of that court to regulate and control their conduct in regard to the subject of such litigation. This power has never been denied. Instances of its exercise by the federal courts in restraint of parties seeking to litigate in the tribunals of the states, are frequent. No reason is perceived why it should not be reciprocal.

The argument drawn from the rules of comity would seem to be more appropriately urged in the district court than here. It is the established, and, we think, correct doctrine of the federal courts, as to all cases where the jurisdiction of the two judicial systems is concurrent and no appeal is given, that priority of suit determines the right. Proceedings in the action first commenced cannot be arrested or affected by those subsequently taken in another court. *Wallace v. McConnell*, 13 Peters, 136. The plaintiff having voluntarily submitted the whole controversy to the courts of the state, cannot complain of the rules of law by which their action is governed, or that he is held to abide their determination; and the rules of comity, if they can be said to have any application, would seem to require that the junior action should be dismissed from the district court.

It will be readily perceived that this is not a case where the plaintiff will be ordered to elect between his action at law and remedy in equity. Such election is never permitted when it will lead to hardship or injustice. If the answer show merits, and the defense be such as cannot be made at law, the suit will be retained, and the plaintiff enjoined from proceeding elsewhere.

Neither is the doctrine of equity as to executory agreements for the sale of lands, at all applicable. Upon a bill to rescind such agreement, on the ground that the vendor is unable to give a good title, if it appear, at the time of decree,

that he is able to do so, the plaintiff will be compelled to accept. This is the case of a contract past and executed so far as the defendant is concerned, and the only question is, whether he shall be allowed to show a partial or total failure of consideration. He was entitled to a conveyance of the land and a transfer of the certificates at the time fixed by the agreement. If the plaintiff neglected or refused to make them, we can see no more reason why the defendant should now be compelled to accept them, than if the consideration had been the transfer of personal property, or the performance of any other act which the plaintiff afterwards wrongfully refused. If he fails to enforce the bonds and mortgage, it will be in consequence of his own wrong in refusing to keep his agreement with the defendant.

In regard to the provisions of the statute regulating injunctional orders where they form a part of the relief demanded *by the plaintiff*, we do not think they should be held to abrogate the ancient and well established power of equity, to restrain and control *him* when his conduct is vexatious and unjust towards the defendant. It is one of the inherent and indispensable powers of the court, which ought not to be taken away except by express words. Much less should it be repealed by implication which at best is very doubtful and unsatisfactory. In regulating the injunction in those frequent cases where it is sought as part of the affirmative relief in an action, the legislature cannot be supposed to have had in mind those occasional instances where it issued in behalf of a defendant. To require the defendant to commence a new suit in aid of one already pending in the same court, would be a most idle and needless waste of time and money ; and it is far more reasonable to suppose that the legislature intended that the former practice should remain as it was, than that this should be the result. We are of opinion, therefore, upon the whole record, that the order of the court below was correct, and that it must be affirmed.

Ordered accordingly.