## ORANGE NAT. BANK *v.* TRAVER and Wife.

*(Circuit Court, D. Oregon. May 16, 1881.)*

1. FOREIGN CORPORATION.

The Oregon act, (Or. Laws, 617,) prohibiting a foreign corporation from " transacting business in this state" until it appoints a resident agent therein, was not intended to prevent such corporation from maintaining a suit in the state courts, and it is not in the power of the state to prevent it from maintaining a suit in this court.

2. SAME.

A corporation, formed under "the national banking act," is either a citizen of the United States only, or a citizen of the state where it is organized and located. If the former, it is not a foreign corporation in this state; if the latter, it is a foreign corporation, but for that very reason may sue in the national courts herein, irrespective of the state legislation.

3. SEPARATE PROPERTY OF MARRIED WOMEN.

A debt contracted by a married woman is, in equity, a charge upon her separate estate; but, if contracted as surety for the benefit of another, the authorities are in conflict whether it creates such a charge, unless her intent to have it produce such effect is expressed in the contract; but, in either case, a note given by the wife for the debt of her husband, with a stipulation that the note is taken by the payee " on the credit" of her separate estate, is sufficient evidence of her intention to charge her estate with the payment of such debt.

In Equity. Suit to enforce a charge upon a wife's separate estate. Demurrer to answer.

*David Goodsell,* for plaintiff.

*George H. Durham,* for defendant.

DEADY, D. J. On December 21, 1877, the defendants, George W. Traver and Emma S., his wife, made their two joint and several promissory notes at Portland for the sum of $600 each, payable, with interest at the rate of $3\frac{1}{2}$ per centum per annum, to Johnson, Clark & Co., or order, at the

First National Bank, Portland,—one in 18 months and the other 24 months after date. Each of the notes contained the following stipulation:

"This obligation is given for the benefit of George W. Traver and Emma S. Traver, and taken on the credit of the separate estate of Emma S. Traver and the property of George W. Traver."

Before maturity the notes passed by indorsement into the hands of the plaintiff, who brought this suit in the state circuit court against the husband and wife to subject certain real property, situated in this city and county, and now, and at the date of said notes, belonging to the latter "as her own statutory separate property," to the payment of the amount due thereon, alleging the insolvency of the husband. The defendants appeared and answered separately, and then caused the suit to be removed to this court. The answer of the wife, among other things, contains the following defence:

That the defendant, at the date of said notes, was the wife of her co-defendant, George W. Traver, and signed them "as surety for husband only;" that no part of the consideration thereof was paid to her, or enured to her benefit, or that of her estate; that said notes were given for a pre-existing indebtedness incurred, "in part at least," prior to her marriage with said Traver.

To this defence the plaintiff demurs for insufficiency. Upon the argument of this demurrer, the question was also made and submitted by counsel:

Can the plaintiff maintain this suit without having first complied with sections 8 and 9 of the act of October 24, 1864, (Or. Laws, 617,) concerning foreign corporations "transacting business in this state?"

Upon the argument of a demurrer, the court will, notwithing the insufficiency of the pleading demurred to, give judgment against the party whose pleading is first defective in substance, (1 Chit. Plead. 707;) and as it does not appear from the bill that the plaintiff has complied with such act, the point may be considered and decided upon this demurrer to the defendant's plea. In support of the negative of this question counsel cite *In re Comstock*, 3 Sawy. 218, and *Semple* v. *Bank of B. C.* 5 Sawy. 88, in which this court held that a foreign corporation is not authorized to transact business in this state without first appointing a resident agent, upon

whom process may be served in actions against it, as provided in said act; and that acts done by it without such appointment are void.

But the "business" which the plaintiff is prohibited from doing in this state is that of banking, which does not, in my judgment, include the right to follow its debtor here and sue him in the courts of the state. Such an act, although strictly speaking it might be included in the phrase "transacting business in this state," is certainly not within the mischief intended to be prevented by the statue, and therefore I do not think it ought to be so construed as to prohibit it. And such was the conclusion of this court in the case of the *N. W. Mut. Life Ins. Co* v. *Elliot*, Dec. 28, 1880.*

Ample provision is otherwise made by the state for the protection of its citizens who may be involved in such litigation, in the provisions of its statutes requiring non-resident plaintiffs to give security for costs, and for all damages caused by an attachment or other provisional remedy before it can be allowed.

But the plaintiff, if a foreign corporation at all, is a citizen of Massachusetts, the place of its organization and business, and is therefore entitled, under the constitution and laws of the United States, to sue in this court on account of its citizenship; and this right cannot be limited or restrained by the state. *Cowles* v. *Mercer Co.* 7 Wall. 121. But whether this suit, in this respect, should now be considered as one brought in this court may be a question; yet I think it should. Although commenced in the state court, it has been removed to this, and that by the act of the defendants, which itself is an assertion by them that the plaintiff may lawfully sue or be sued in this court.

Again, the plaintiff is a corporation not formed under the law of any state of the union or foreign country, but under a law of the United States,—the national banking act of June 3, 1864,—but located at Orange, Massachusetts.

It has been finally settled that a suit in a national court by or against a corporation, for the purpose of jurisdiction, is

*5 FED. REP. 225.

to be conclusively presumed to be a suit by or against citizens of the state under whose laws such corporation was formed; and therefore it is deemed a citizen of the state which created it. *O. & M. Ry. Co.* v. *Wheeler*, 1 Black, 295; *Cowles* v. *Mercer Co.* 7 Wall. 121. Strictly speaking, then, the plaintiff is a citizen of the United States, but not of any state. Still, the plaintiff, though organized under a law of the United States, is by such organization and law "located" in the state of Massachusetts, and by a parity of reasoning its stockholders may be presumed to be citizens of said state, and the corporation be entitled to sue and be sued as a citizen of Massachusetts. This is the conclusion reached by Mr. Justice Blatchford, after a thorough investigation of the subject, in the *Manuf'rs N. B. of Chicago* v. *Black*, 8 Batchf. 137. And, doubtless, the plaintiff is a foreign corporation, within the mischief sought to be remedied by the act of October 24, 1864, *supra*, and if it is held to be a citizen of Massachusetts it must be so regarded.

But, admitting this, I do not think the local statute should be construed so as to prevent a foreign corporation from maintaining a suit in the state court, and it is very clear that the state cannot prevent such corporation from maintaining a suit in this court. Upon the showing in the bill the plaintiff is entitled to sue in this or the state court. As these contracts were made in 1877, the act of October 21, 1880, (Sess. Laws, 6, entitled "An act to establish and protect the rights of married women,") which is supposed to have altogether relieved the wife from the "disabilities" or protection, as the case may be, of coverture, does not affect this case. By marriage, at common law, the property of the wife became that of the husband—the personalty absolutely, and the realty during the marriage. But, in time, the doctrine was established in equity that the wife could hold property to her separate use and benefit, and this has, in effect, become the fundamental law of this state. Or. Const. art. 15, § 5. With the capacity to acquire and hold property to her separate use, she was allowed to have the power to dispose of the same as if she were unmarried, unless the instrument or means

whereby she acquired the title provided otherwise.  *Yale* v. *Dederer*, 18 N. Y. 265.

Out of this general power of disposition naturally grew the lesser one—the power to charge her separate estate with a specific debt or engagement for her own benefit or that of another.  In this way the disability of coverture, as to her separate property, was practically removed; but her contracts were still invalid, except so far as they might affect such property, and she is not liable upon them personally, either at law or in equity.  Whether a wife has charged her separate estate with a debt or engagement in a particular case is a question of evidence, it being the generally-conceded rule that if the same will enure to the benefit of herself or her separate estate, that she is presumed to have intended to so charge it.  But where this is not the effect of the transaction, but the debt or engagement is incurred or made for the benefit of another, the authorities are in conflict as to the necessary evidence to establish her intention to charge her separate estate therewith.  By the English and a majority of the American authorities it is held that if a wife cont act in writing, so as to satisfy the statute of frauds, to pay a sum of money, either as principal or surety, for her own benefit or that of another, it is sufficient evidence of her intention to charge her separate estate, and will create a charge thereon that may be enforced in a court of equity. Bish. Law of M. W. § 870; *Bull* v. *Kellar*, 13 B. Mon. 381; *Deering* v. *Boyle*, 8 Kan. 525; *Todd* v. *Lee*, 15 Wis. 401; *The M. B. of St. Louis* v. *Taylor*, 62 Mo. 338; *Williams* v. *Winston*, 9 Rep. 418, (S. C. of Ohio, 1880.)

But in other states, and notably in New York, it is held that the debt or engagement of the wife, the consideration for which does not enure to the benefit of her separate estate, does not create a charge upon said estate, unless her intention to do so is declared in the very contract which is the foundation of the charge.  *Yale* v. *Dederer*, 18 N. Y. 265; S. C. 22 N. Y. 450; S. C. 68 N. Y. 324; *Manhattan B. & M. Co.* v. *Thompson*, 58 N. Y. 80; *The C. E. Ins. Co.* v. *Babcock*, 42 N. Y. 614.

The supreme court of this state has not passed upon the question. It is obvious that the rule established in New York by the decision in *Yale* v. *Dederer, supra,* is a departure from the current of authorities on this subject; but, as an original and correct exposition of the elementary principles of law applicable to the question, it commends itself to my judgment. Whoever takes the signature of a married woman to an obligation, given for the benefit of her husband or another, knowing that such signature is void as to her personally, but expecting to rely upon her separate estate for its fulfilment, ought to have her declaration therein to the effect that she signs the instrument with such intention and understanding. But, even upon this view of the law, I do not see how the stipulation in these notes can be otherwise construed than as manifesting the intent and purpose of the wife to charge her separate estate with the payment thereof. It may be admitted that the representation therein that the obligation was given for her benefit is false, and that she is not estopped to show it. Big. Estop. 276, 485.

It may also be admitted that the stipulation would have been more explicit and in better form if it had stated that the wife *gave* the obligation with the intention to charge her separate estate therewith, rather than that the payee *took* it "on the credit" of said estate. But, considered as it is, there can be no doubt about its meaning and the intention of the parties thereto. It is expressed that the payee *took* the obligation "on the credit of the separate estate" of the wife, and if she, knowing this fact and signing the instrument with this declaration in it, really intended otherwise, as she avers, then she contemplated a fraud which she cannot be heard to allege against the plain import of her own agreement to the contrary. There is no set form of words necessary to manifest the wife's intention to create the charge upon her estate. It is sufficient if it fairly appears from the language used, under the circumstances, that such was her intention. She gave this obligation to pay her husband's debt with the express understanding that it was accepted by the creditor upon the credit of her separate estate, and the only inference from this

fact, compatible with her honesty, is that she so intended it. This undertaking may have been an unwise one on her part. But, where the law gives the wife the power to contract as a *feme sole*, it will hold her to a like obligation to perform, regardless of the consequences to herself or her estate.

The demurrer is sustained.