## CURTIS and CURTIS *v.* ENGEL and others.

To make the separate estate of a married woman liable for her debt, where it is not charged upon the estate pursuant to the deed of settlement, it must be shown that the debt was contracted either for the benefit of her separate estate, or for her own benefit upon the credit of the same.

A general debt incurred by a married woman is not a charge upon her separate estate, nor is such estate chargeable upon any implied undertaking of hers.

A milliner on the eve of her marriage, transferred her furniture, stock in trade and things in action to a trustee for her sole and separate use, without providing for conducting the business in future. After her marriage, the stock was disposed of, and she went to Europe. It was after an interval, resumed by her, in her own name, her husband aiding in its management, but the trustee having no concern with it. *Held,* that the business was not conducted for the benefit of her separate estate, and the latter was not chargeable with the debts contracted therein. The business was in point of law the husband's, and the profits belonged to him.

And upon the evidence, it was held that the goods furnished to her and her husband in the millinery business, were not sold upon the credit of her separate estate.

Oct. 14, 15, 16, 17, 1844 ; January 10, 1845.

THE bill was filed by the complainants in behalf of themselves and all other creditors of Amanda A. Engel, formerly Mrs. A. A. Mott, against her with her husband, Adolph J. Engel, and James Donaldson and John Cook, who were respectively trustees of her separate estate ; to charge upon the latter, certain debts incurred for supplies furnished to a millinery establishment which she conducted in the city of New York. Messrs. Donaldson and Cook were her trustees under the will of her grandmother. Mr. Cook was her trustee under a marriage settlement, executed on the eve of her marriage with Engel, by which she transferred the property she had accumulated in her trade. Under both trust dispositions, the property was settled to her sole and separate use, free from the control of any husband she might have. The will gave her no control of the capital of the estate, beyond a power of appointment, to take effect after her death. By the marriage settlement, she had an unlimited power of disposition of the entire estate, by a sealed instrument executed in the presence of two witnesses.

The bill charged that the goods supplied by the complainants were sold on the sole credit of the separate estate of Mrs. Engel, and for its use and benefit.

The answer traversed these facts in positive terms; and alleged that after Mrs. Engel's marriage with E., the business was not conducted on her account, or for her benefit, or that of her separate property.

Much testimony was taken, but it is not deemed necessary to state i at large, as its leading features are presented in the decision.

*H. F. Clark, G. W. Morris,* and *Murray Hoffman,* for the complainants.

*J. Cook,* in person, with whom was *D. Graham,* for the defendants.

THE ASSISTANT VICE-CHANCELLOR.—The complainants proceed against the separate estate of Mrs. Engel, without showing any charge or appointment made in pursuance of the deeds of settlement.

Therefore in order to sustain their suit, they must show, that the debt was contracted, either *for the benefit of her separate estate,* or for her own benefit *upon the credit of the separate estate.* (*North American Coal Company* v. *Dyett,* 7 Paige, 9; S. C. *on appeal,* 20 Wend. 570.)

Whatever may have been the expressions of judges on the subject, this is the utmost extent to which the doctrine has been carried by the decisions in this state. And in going to this extent, they differ more or less from the decisions in several other states; although they conform to the law as settled in England by Lord Thurlow, and after being overturned by the Earl of Rosslyn and Lord Alvanley, as re-established since the accession of Lord Eldon to the wool-sack. (For the decisions in other states, see *Lancaster* v. *Dolan,* 1 Rawle, 231, 248; *Ewing* v. *Smith,* 3 De Saussure's Eq. R. 417, which virtually overruled *Carter* v. *Eveleigh,* 4 ibid. 19, decided before *Ewing* v. *Smith,* though reported subsequently; *Magwood* v. *Johnston,* 1 Hill's

Ch. Rep. 228; *Clark* v. *Makenna*, Cheves's Eq. Rep. 163; *Morgan* v. *Elam*, 4 Yerger's R. 375.)

A *general debt* made by a married woman, having a separate estate, is not a charge upon that estate; and such estate is not chargeable upon any *implied* undertaking of hers. (2 Story's Eq. Jur. § 1398, 1400; *Gardner* v. *Gardner*, 7 Paige's R. 112; *Murray* v. *Barlee*, 4 Simons, 82; *Tullett* v. *Armstrong*, 4 Beav. 319; S. C. 5 Lond. Jur. R. 601.)

Aside from the questions as to the character of the trust property, have the complainants brought their claim within either of the grounds established in the case of Mrs. Dyett?

I. They insist that the goods in question were purchased for the benefit of Mrs. Engel's separate estate.

One simple mode of testing this proposition, is to ascertain whether the profits of the millinery establishment for which the goods were furnished, belonged to Engel as her husband, or to Mr. Cook as her trustee in the last settlement. The fact that her stock in trade at the time of the marriage was passed to the trustee, together with her furniture, debts due to her, and all her other property not already in the prior trust; does not aid in the inquiry, because the business in controversy was not conducted with or upon that stock. The parties went to Europe after their marriage, and the millinery concern of Mrs. Mott was at an end. The business was conducted in their absence, but there is no evidence that it was for her use further than the disposition of the stock assigned to the trustee.

After their return, it was continued, under Mrs. Engel's occasional charge; and at the establishment, was conducted in her name, as the custom appears to be among milliners who are married. In the spring of 1839, before the goods in question were sold, a store was opened in Broadway, with her name on the sign. She says that her husband hired it, and alone attended to the business there, and I find no proof to the contrary.

The trust deed is silent as to any future business to be carried on by Mrs. Engel. Nor, in my opinion, can any intention to conduct the business for her sole use, be implied from that instrument. There is no clause in it which is not entirely proper and pertinent to the plan of vesting all her then existing property in

a trustee, to be managed by him for her benefit; not by setting up a millinery store, but by the usual mode of executing a trust; the converting the assets into securities or lands producing an income. The words, *profits, gains, income,* and *increase,* are applied indiscriminately to the real estate, as well as to the personalty transferred.

The provision that the trustee might make use of their joint names in suits for the recovery of sums due, or to grow due to her on her separate estate, was appropriate in reference to the debts and things in action standing in her name before the marriage, and transferred to Cook by the trust deed.

There are other clauses which conflict with the idea that any active business or trade was to be carried on under the trust, or with the trust property.

Thus, after requiring all of the property which should at any time consist in money, to be invested on securities or real estate, &c., the deed provides that "*such estates* and all gains and the increase thereof, shall from time to time be *accounted for by Cook,*" to and with Mrs. Engel. And again, all the securities and *estates or properties,* in which the separate estate should be thereafter invested, were to be taken and made *in the name of Mr. Cook,* his executors, administrators or assigns.

In short, I can only gather from the instrument, the intent to vest in the trustee all Mrs. Engel's property, for her separate use, to be managed subject to her appointment and direction, as such trusts usually are. I can perceive no indications of the design which the complainants seek to deduce from its provisions, to secure to Mrs. Engel as her separate estate, the fruits of her future industry, taste and enterprise, in the department of business in which she was then engaged, provided she chose to continue it, or to resume it at some future time. The stock in trade was mentioned in the trust deed, for the same reason precisely that her furniture was; because a part of her property existed in that form.

If there had been any intention to secure to her sole use, her future earnings and acquisitions, a suitable provision would have been made in the deed. This is frequently done to provide for after acquired property by gift or inheritance.

As the case stands, I do not think that Mr. Cook could have claimed as trustee, any interest in the business transacted in either of the stores, when the complainants sold their goods ; or could have maintained a suit upon any debt contracted at either of the stores, for millinery sold by Mrs. Engel or her husband. If the business were really that of her separate estate, the legal title of all such debts would have been in Cook, and he could have collected them in his own name.

In the case of Mrs. Dyett, 7 Paige's R. 9, the debt was for coal used in a manufactory which was a part of her separate estate, and which was at the time of the sale conducted for her separate use and benefit.

Here the millinery business formed no part of the separate estate ; and it was not carried on for the separate use of Mrs. Engel, according to my view of the case.

II. Were the goods of the complainants furnished for the benefit of Mrs. Engel and upon the credit of her separate estate ? If the profits of the business belonged to Engel, which is my conclusion as before stated, the goods were not furnished for Mrs. Engel's benefit ; and this is an answer to the inquiry.

But I will proceed a step farther. Suppose the complainants had sued Engel at law for their debt, could he have defended himself on the ground that the goods were sold to his wife, for her separate use and upon the sole credit of her separate estate ? Undoubtedly not. If he had referred to the sign, exhibiting his wife's name at the door, and proved that she managed the whole business, and in her own name, and that the complainants had charged the goods to her in their books, and knew she had property before the marriage and relied on that instead of relying on him, it would have availed nothing  The answer to it all would be, that milliners always do business in their own names ; their husbands names never appear either in purchases or sales ; you, Mr. Engel, knew of your wife's buying these goods and conducting this business, and you did not dissent or stop it, therefore the law charges you as the party in the transaction and the purchaser of the goods.

The complainant's case as proved, is entirely consistent with the position that the business was in truth that of Engel, in vir-

tue of his marital rights, and that they believed the property on which they relied, had vested in him by the marriage. I do not imagine that the complainants, if they had been convinced that Mrs. Engel had married without any settlement, would have sold their goods with any less hesitation, or in any different manner, to these parties. It was perfectly natural for Mrs. Engel to make all the purchases, if the business were her husband's; because she was familiar with it, and he was not. It is more surprising that he ever attempted to purchase goods for the stores, than it would have been if she had bought them all.

Then as to the charge to Mrs. Engel in the complainant's books. That is no evidence against her, because she knew nothing about their bookkeeping. Their acts which came to her knowledge, or were likely to be known to her, indicated that they looked upon her husband as the debtor. Their receipts were given to him, not as received from him on her account, but as on his own account; and the receipt of October 23d, 1839, is in his name in full for bills to May inclusive.

The bill of the goods in question, produced before the examiner, appears to have been originally made out to "*Mr. A. Engel*" and subsequently altered to "*Mrs. A. A. Engel.*" (Not that I believe the alteration was made for any sinister purpose.)

The complainants have not proved to my satisfaction that they sold the goods upon the credit of Mrs. Engel's property, or relied upon it, *as being her separate property*, or her property exclusive of her husband. The most that they show, is that they knew her as having property before her marriage, and they relied upon that property after her marriage. Unless they knew of the settlements, (and there is no proof that they did,) the legal inference is, that they relied upon it as the property of the husband, so far as by law marriage entitles a husband to an interest in property of the wife; and the testimony, upon the whole, corroborates that inference.

The result is, that the complainants do not, upon either ground, bring their case within the principles on which this court is enabled to reach the separate estates of married women.

There is no power in the court to compel Mrs. Engel to make an appointment for the payment of this debt. The case of *Hallett*

v. *Thompson*, 5 Paige, 586, cited for that proposition, is not applicable to a married woman.

The bill must be dismissed with costs.