Johnson, J.
The demurrer to the answer and the special, findings of the court involve the same questions, and will be considered together.
The facts show that the wife was not an original party to the note, but was simply an accommodation indorser, either for her husband or with him, to enable him to dispose of it to the plaintiff. She entered into no contract or - engagement, either with plaintiff" or her husband, concerning her liability tq pay.the note, other than ai'ises out of the single act of writing her name under that of her husband, knowing that the plaintiff had promised to purchase-it if she would do so.
She had no communication with the plaintiff, except, being told that if she would indorse, her husband could, get the money, aud did not hold herself out as acting om *161 tbe faith of her separate estate, nor did she express or entertain, so far as appears, any intention to charge her sepa-' rate estate.
She owned the lots in fee, but whether they were separate-property, by virtue of the acts of 1861 and 1866, or such as-would have been so regarded in a court of equity without-those statutes, does not appear. The plaintiff dealt on the faith of this property, but without any intention expressed or evinced by her to charge it with this obligation, other than may be implied from the fact of writing her name asindorser.
The transaction was exclusively with the husband, and for his sole benefit.
Authorities need not be cited to show that this indorsement was of no validity against her personally.
By the commercial law the contract of an indorser of a-note is to pay if the maker does not, and the claim is, that inasmuch as the wife is not liable on that contract, equity will imply another contract, which in fact was not made,, and under circumstances from which at common law no» contract would be implied to make this void obligation, for which she received no benefit or charge on her separate estate.
As this undertaking was utterly void at law, for any purpose, the question may be narrowed down to this: Whether-a court of equity will imply an intention to charge the separate estate of a married woman, from the sole fact that she indorsed a note for the accommodation of her husband,, and as a surety merely, to-enable him to negotiate it, where-no such intention was expressed or in fact entertained, and whether equity will specifically enforce such an implied engagement ?
Counsel on each side have exhibited much research and ability in the argument of this question, and have materially aided us in our labors.
On the one side, it is said that both reason and authority warrant such implication, inasmuch as the wife is presumed; *162 to know that at law her indorsement was not binding on her, and it will be presumed that she did not intend to ■commit a fraud on the plaintiff, and therefore equity will assume she intended some effect to be given to her act which can only be done by charging the debt on her property.
On the other hand, it is insisted that as she was only a surety, receiving no consideration, she is guilty of no fraud, and there is no equity in creating for her au intention, by legal construction of her act, which she did not in fact have or express; that an intention to charge is an essential element in her engagement, and that while a court of equity will presume such intention from the simple act of incurring the obligation, when the indebtednesss is for the benefit of herself or her separate estate, yet such intention will not be implied from such act where she is surety merely.
It is insisted that equity will not lend its aid beyond the express terms of a contract of suretyship ; that their contract is one strietijuris, to which terms will not be annexed by implication.
As preliminary to the main question, it may be stated that Earle, the maker, and Frederick Straehle, an indorser of this note, were both sued at law, and were liable to execution on a jhdgment at law, and so far as we are advised by the printed record, both are entirely solvent.
If such be the fact, the plaintiff had a plain, adequate, and complete remedy at law, and it may well be doubted whether, in such a case, the plaintiff can seek the aid of a court of equity, for equitable relief, against a subsequent party on the note who is only a surety.
As this point has not been made in argument, we only notice it as affecting the point controverted. This note is secured by a mortgage, and the plaintiff is in equity entitled to foreclosure to pay the debt.
These facts are material, if for no other purpose, as bearing on the question of the wife’s intention to charge her separate property.
*163 If the- prior parties to this note were solvent, or if it were amply secured by mortgage, or if both were true, we would hardly presume that the plaintiff dealt solely on the credit of the wife’s estate., nor that she could have seriously thought of incurring any obligation in equity, when the plaintiff had an adequate remedy at law, at least until her principals were exhausted.
In Yale v. Dederer, 18 N. Y. 265, and in 22 N. Y. 450, where the wife was a surety for her husband, the averment that the husband was insolvent, and that a judgment rendered against him on the note was uncollectable, was an important element of the case.
In Phillips v. Graves, 20 Ohio St. 372, it was averred that the husband, who was no party to the note, was insolvent.
If the question of intent is one of fact, and not of law, to he conclusively presumed from signing the obligation, then the solvency of the prior parties, and the security afforded by the mortgage, were circumstances affecting the question.
Again, as a general rule, an intention to charge will hardly be presumed where the obligation is amply secured otherwise. In such case no wrong is done to the obligee, and it is not necessary, to prevent injustice to him, that equity should presume a charge on the wife’s estate.
Returning to the main question, it may be said that the principles of the common law are in fOill force in Ohio, so far as they are adapted to our circumstances and form of government, and not inconsistent with the letter and spirit of the federal and state constitutions and statutes. Linsey v. Coat, 1 Ohio, 245; Bloom v. Richards, 2 Ohio St. 387; Cleveland, Col. & Cin. R. R. Co. v. Keary, 3 Ohio St. 201.
By that law, and prior to any modification of it by statute, the wife’s general property, as distinguished from her seperate estate, came under the absolute control of her husband. Her goods and chattels passed- absolutely to him upon marriage: her choses in action became his, if reduced to possession during coverture, and the rents and profits of her'lands belonged to him, with the right to control the *164 land as his own while the relation of husband and wife-subsisted.
Prior to the recent legislation in Ohio, beginning with-the acts of 1861 and 1866, whatever sepárate estate a wife had was that known only to courts of equity.
All the wife’s property, not specially set apart in some way to her sole use, usually by the intervention of a trustee, was called her general property, and as to this, the husband, by the common law, was entitled to control.
• The character of separate property, and the wife’s power-over it, generally depended on the limitations in the instrument by which she was invested with it.
It was created, supported, and protected by ■ courts of chancery. They assumed this control as the special guardians of married women, for its preservation, and their protection. .
The court was a shield of protection against the common-law rights of the husband, not a sword to destroy, nor a power to appropriate it to the satisfaction of the husband’s demands, and so defeat the very object of its creation.
This estate, whether it arose by virtue of an ante-nuptial contract with her husband, or by gift from him or from a stranger, independent of such contract, was under the special guardianship of the chancellor. -At-first the intervention of a trustee was thought necessary to support such an estate, but soon it was settled that, for the wife’s protection,, the husband might be treated as her trustee, and the trust enforced as against him. Tullet v. Armstrong, 1 Beav. 21 ; Schouler Domestic Relations, chap. 10.
It was an equitable estate, over which courts of law had no control. As to this property, she became a feme sole; she might contract in her own behalf, sue and be sued in her own name, and manage and control the same, subject always to the limitation imposed by the instrument, creating the estate.
This estate had its origin in the Roman law, by which, unless the marriage was in a particular way, the husband *165 ;and wife were distinct persons, and might have separate estates, rights, and interests as regards contracts, debts, and injuries. 1 Spencer Hist, of Eq. Jur. 549.
This learned author says that when the court of chancery thus established that the wife might have a separate estate, it clearly violated the .laws of property as between husband and wife, bpt it accorded with popular feeling and •prevailed.
He goes on to add: “After it had been settled that a wife might enjoy separate estate as a feme sole, the laws of property came to be attached to this new estate, and, as part of such law, the power of alienation belonged to the wife. This power; it may be observed, though in anticipation, was found to be destructive of the security intended for such property, and prohibitions against alienation were introduced; the court of chancery here again interfered, and, by another violation of the laws of property, supported the validity of •such prohibitions, in order to secure the wife the desired protection against the marital rights.”
This restriction on the^ws disponendi of the wife was introduced by the court of chancery under its assumed power, “ to model and qualify an interest in property which it had itself created, without regard to those rules which the law has established for regulating the enjoyment of ■property in other eases.” Hence, she could not devise her real estate, unless in execution of a power to that effect, nor could she charge her lands beyond the rents and profits.
Having established the separate estate of the wife, it was 'but just that the court should bind her to the extent of making that estate liable for her debts.
The extent of the power of a married woman to charge 'her separate estate, as it existed in England and in Ohio prior to our statutes, was directly before the court in the leading case of Hulme v. Tenant (1 Bro. C. C. 16), 1 Equity Ld. Cases, 501.
The cases are there summed up in these words :
“ It is not like the case, of an infant who is incapable of .acting; but, in respect to femes covert, determined cases *166 seem to go thus far, that the general engagements of the wife shall operate on her personal property, shall apply to the-rents and profits of her real estate, and that her trustees shall be obliged to apply personal estate and rents and profits-when they arise to the satisfaction of such general engagements ; but this court has not used amy direct process against the separate estate of the wife, and the manner of coming at the separate property of the wife has been by decree tO' bind the trustees, as to personal estate in their hands, or rents and profits, according to the exigency of justice or the engagement of the wdfe to be carried into execution. / know of no case which has gone further than that.”
The jus disponencli, from which is drawn the power of a married woman to charge her estate, or rather the power of a court of equity to charge it, was, even in England, far from being absolute as to her lands, as this citation shows.
If it is founded entirely, as all the authorities concede,, on the right of the wife to dispose of her separate property, it could certainly go no further than to allow her to-make contracts specifically charging this estate; but in England some cases go a step beyond, and charge her general engagements, having no relation to the separate estate.
This anomalous and illogical extension of the principle is justly characterized by Chancellor Kent, when he says (Methodist Church v. Jacques, 3 Johns. Ch. 77): “It is difficult to perceive upon what reasoning or doctrine the bond, or parol promises of a feme covert could for a moment be deemed valid. She is incapable of contracting according to the 1 common right,’ mentioned by Lord Macclesfield; and if investing her with separate property gives her the capacity of a feme sole, it is only when she is directly dealing with that property. The cases do not pretend to give her any of the rights of a feme sole in any other view or for any other purpose.”
Accordingly, it was held in Curtis v. Engel, 2 Sand. Ch. 287, that, “To sustain their suit,.the plaintiffs must show that the debt was contracted, either for the benefit of the sep *167 arate estate, or for her own benefit upon the credit of the estate.”' While the English courts of equity have always, in proper cases, charged the estate of the wife, yet they have never carried the doctrine of jus disponendi as to real estate so far as to destroy the estate by a sale to. pay the wife’s general engagements. Hence our courts have held that:
“ A married woman, unless restrained by the terms of the instrument of settlement, may, by her contract, and without the consent of trustees in whom the legal title may be vested, charge- her separate estate, at least to the-extent of the rents, issues, and profits thereof, with the-cost of reasonable repairs and improvements for the benefit of the estate; and to that extent a mechanic’s lien may attach under the statute.” Machir v. Burroughs, 14 Ohio St. 419.
In Phillips v. Graves, 20 Ohio St. 382, it is, however, stated that the power of the court over both real and personal estate of the wife extends to enforcing the payment-of charges on the separate estate, “through a receiver— 1st, by subjecting her personal property; 2d, by sequestering the rents and profits of the realty; and 3d, by a sale of the realty when the same is necessary.”
That this power of the court to sell the land, “ when the-same is necessary,” may, and probably does exist in Ohio,, under our legislation on the subject, which has converted the wife’s general estate into a separate estate, and expressly aiithorized her to make contracts for the improvement or use of the same; but clearly such power did not exist as to those separate estates consisting of land, as-known to courts of equity prior to that legislation. To-what extent, therefore, are marital rights, as they existed at common law or in chancery, modified by statute in Ohio ?
By the act of February 22, 1831 (1 S. & O. 461), a form is prescribed by which a married woman may convey or incumber any interest of her own by deed or mortgage.
By the act of May 3, 1852 (1 S. & O. 1615), she was authorized to make a valid will.
*168 By an act in the year 1846 (Swan, 712, 713), the bus-band’s interest in bis wife’s real estate was exempted- from tbe levy to pay Ms debts during ber life or tbe lives of tbe beirs of her body, nor could he convey or incumber the same during that time unless she joined in the instrument, executed as required by the act of 1831. The same statute made like provisions, as to the husband’s rights, as to the wife’s personal estate.
Under this act the common law right of the husband over the lands of his wife, other than her separate estate, to receive and enjoy the rents and profits, was unimpaired. He could manage and control the same as fully as before, but could not convey nor incumber, except his wife joined in a deed duly executed.
By the act of April 3, 1861 (58 Ohio L. 54), the husband was stripped of his marital right' over the wife’s general estate in lands, and it is declared that:
“ Section 1. Any estate or interest, legal or equitable, in real property, belonging to any woman at her marriage, or which may have come to her during coverture by conveyance, gift, devise, or inheritance, or by purchase with her separate money or means, shall, together with all rents ■and issues thereof, be and remain her separate property, and under her sole control; and she may, in her own name, during coverture, lease the same for any period not exceeding three years.”
By the amendatory act passed March 23, 1866 (S. & S. 391), the disability of married women to contract is affected in this : That they are enabled to make in their own names during coverture contracts for labor and materials, for improving, repairing, and cultivating their separate real estates, and to lease the same for any period not exceeding three years.
The effect of this legislation, in brief, was to divest the future husband of all right or interest in the wife’s land save his curtesy, which is excepted, and to convert all her estate, both legal and equitable, into her separate estate.
This was clone by the act of 1861, but that act did not *169 •attempt to impose any new liabilities on the wife, nor clothe her with any new power over this estate, other than to lease the land for a term not exceeding three years. This new separate estate is the creature of the statute. The act leaves the wife’s power over her separate estate to •charge it with her debts, as it stood before; but, by the •supplementary act of 1866 (S. & S. 391), this disability is so far removed as to authorize her to control her own property, and to make contracts in her own name, for labor and materials for improving, repairing, and cultivating the same, and to lease the same for a period not exceeding three years. This act clothes the wife with power to contract in her own name in specified cases. It does not attempt to extend or abridge her power, which she already possessed in equity, to charge this separate estate, nor does •it specify what acts of the wife amount in equity to such charge.
• In that regard the power of the wife is unchanged in ■cases where she is not thus clothed with legal capacity, so far as these statutes are concerned.
■ This is manifest by looking at section 3 of the act of 1866 and section 28 of the code of civil procedure.
By section 28 of the code, as it was in force when this ■action was brought, it is provided :
“ Sec. 28. Where a married woman is a party, her husband must be joined with her, except, that when the action ■concerns her separate property, or is between herself and her husband, she may sue or be sued alone; and in every such case her separate property shall be liable for any judgment rendered therein against her, to the same extent as would the property of her husband were the judgment rendered against him. But in no case shall she be required to prosecute or defend by her next friend.”
This act was passed in 1870. By the third section of the act of 1866, it is provided :
“ Sec. 3. In any action against husband and wife upon ■any cause existing against her at their marriage, or upon any tort committed by her during coverture, or upon any *170 contract made by her concerning her separate property, as provided for in section 1 of this act, the separate property of the wife shall be also liable to be taken for any judgment rendered therein.”
Taking these provisions, together with section 1 of the act of 1866, and they amount to this : that by section 1 the wife was invested with power to contract, in her own name, for labor and materials for improving, repairing, and cultivating her separate estate, and, by section 28 of the code, she was liable to be sued, either with or without her husband.
Where the action concerns her separate property, and is founded upon a contract made by her, as provided in section 1 of the act of 1866, she may be sued with or without her husband in action at law, and her property is liable to be taken to satisfy the judgment, the same as if she were a feme sole.
In short, as to all contracts which the wife may make in her own name for the benefit of her separate estate, a right of action at law is given against her as a feme sole.
Whether, under section 28 of the code, as it then stood,, or as amended in 1874, there may not be other causes of action than those arising under the act of 1866, w'hich concern^ her separate estate, in which a judgment at law might be rendered against her, we need not now inquire.
As to all equitable proceedings to charge the estate of a. married woman, upon other contracts or engagements than those specified in the act of 1866, no change or'‘modification has been made by these statutes; but as to those contracts specified, a plain, adequate, and complete remedy at law is given, the same as if the wife were a feme sole. Phillips v. Graves, 20 Ohio St. 372 ; Todd v. Lee, 15 Wisconsin, 380; Yale v. Dederer, 18 N. Y. 265.
The case at bar, not being upon a contract for the benefit of the wife’s separate estate, must stand or fall, unaided by these statutes, farther than their tenor and spirit may aid the court in ascertaining the powers of the wife to bind her *171 separate estate upon other engagements, and the power of a court of equity to enforce them.
It has been suggested with much reason that this legislation, prescribing the wife’s liability in the cases specified, raises the presumption that in all other cases it was not intended she should bind her estate, and the maxim expressio unius exelusio alterius is invoked.
It is said, as the legislature has delegated to the wife power to contract in specified cases only, the presumption is that it was not intended she should do so in oth.er cases generally. The answer is : Prior to this legislation the wife had the power to make engagements binding, not on her, but on her property, in a court of equity. The effect of these statutes was : 1st. To enlarge her separate estate by making all her general property her separate estate; and, 2d. To make her liable at law for the improvement of that estate, as provided in section 1 of the act of 1866. The remedy on all contracts, which by this act she is authorized to make in her own name, was changed from one in equity to one at law. Phillips v. Graves, 20 Ohio St. 372 ; Jenz v. Gugel, 26 Ohio St. 527.
¥e must therefore recur to the principles governing courts of equity, as modified by Ohio Statutes, to find a solution of this case.
The engagements of a married woman having a separate estate, and acting as a feme sole, may be classified as follows :
1. Such as benefit her separate estate, which by the act of 1866 she is authorized to make in her own name.
2. All contracts concerning her separate estate other than those which she can make in her own name by the act of 1866.
3. All debts incurred by her for her own benefit.
4. Debts contracted by her on her sole account, though not for her own benefit, but the benefit of which accrues to others.
5. Contracts of suretyship for the debts and obligations of others.
*172 Remedies under tbe first class aré now by action at law, ■and not in equity. In tbe remaining classes, whatever relief exists, is in equity, as by common law, such engagements. are void.
1. The effect of the act of 1866 wras to remove all causes •of action against a married woman on her contracts which she is therein authorized to make in her own name from the domain of equity, if there is an adequate remedy at law.
2. The second class embraces all contracts concerning the separate estate, not so authorized to be made in the wife’s name, such as the execution of deeds, mortgages, and leases for a longer term than three years. As to these, the statute requires that, to make the wife’s acknowledgment valid, she must have been examined separate and apart from her husband, and that she freely and voluntarily executed the same. As to these, and ail other contracts under this class, whatever remedy exists is equitable.
8. "When the wife contracts debts on her own account and for her own benefit, whether it is a general engagement or one where she specially charges her estate.,
Phillips v. Graves, 20 O. S. R. 372, belongs to this class.
There the power of a married woman to charge her separate estate for her own debts or obligations for her benefit, ■and what will constitute evidence of intention to so charge, has been clearly defined and settled.
. That was a case of a contract not coming within the class provided for in the act of 1866, nor concerning her separate ‘property, but was a general engagement for a piano, which she had purchased in her own name and for hér own benefit, for which she agreed to pay.
No reference was made in the contract to her separate estate; nor was any intention expressed in the written obligation to make the debt a charge on the land. It was held:
1. That a married woman, possessed of a separate estate of real or personal property, may charge the same with her debts at least, to the extent that the liabilities may be in *173 curred for'the benefit of such estate, or for her own benefit,. •upon the faith of her separate property.
2. That such power is incident to the unqualified ownership of property, and is only limited by the terms of the instrument creating such estate, or by implication arising therefrom.
3. That the intention to charge “her separate estate, at the time her, liability was incurred, may be either' expressed' or implied.
4. That such intention may be implied from the fact that she executed a note, a bond, or other obligation for the indebtedness.
As the case at bar is not to charge the separate estate’ with the wife’s debt, but as an indorser or surety on the-debt of others, it is an obligation not incurred for the benefit of herself or her separate estate. All that is decided by that case was, that where the wife incurred a debt for the benefit ot herself or of her separate estate, an intention to charge the separate estate may be implied from the mere-fact that she gave a note or other obligation for it. Whether, if no note or other obligation had been given, but the debt had been verbally incurred for her benefit, such implication would arise, is not decided, but the facts of the-case aud the reasoning of the learned judge would seem to-be that the implication arises, rather from, the fact that she contracted the debt for her own benefit than because she gave the note; for it is said, on page 385, in speaking of the rule in England, whether the debts were verbal or in writing, courts of equity will charge them on the land when the. intention is either expressed or implied. It is said that the chancellor proceeds in rem; and charges her separate estate, “ as equity and good conscience require.”
In that case one of the allegations of the petition was :
“ That said pianoforte was purchased by said Elizabeth for her own benefit, and for her own separate use and. property, and “ that at the time of the sale of the said’, pianoforte it was agreed and understood, by and between said plaintiffs and said Elizabeth, that the same was sold; *174 upon the credit of her separate property, and that she intended to, and did, charge her separate estate and income with the payment thereof.”
To this there was a demurrer, by which it was admitted that it was agreed between them, at the time the wife bought the piano, that it was sold on the credit of her estate, and that she intended to, and did, charge her separate estate.
Here nothing was left to implication. The debt was, by express agreement, a charge on the estate. An intention to so charge was manifested by her, and on the faith of that the piano was sold.
The benefit of the purchase inured to the wife, and, in addition to this, it was made on the faith of her property, she intending to, and, in fact, charging the same with its payment.
It was thus a strong case for equitable cognizance.
In the opinion of the court, and correctly as we think, this principle is adopted, that, as the debt was contracted by her in her own name, the benefits of which inured to her, it was but just that her estate should be charged, and for that purpose a court of equity would impute to her an intention to charge to prevent her from the commission of a fraud, and to compel her to do that which in equity and good conscience she ought to do.
As was said in Yale v. Dederer, 18 N. Y. 265, the debt was made a charge upon the separate estate, not on the ground that the contracting of it was of itself an appointment or charge, but because, when contracted for the benefit of the wife, it was just that the estate should answer.
It was such a state of case as if she had been a feme sole the common law would, in the absence of an express promise, imply one. 1 Chitty on Con., chap. 1, sec. 11, and cases cited.
The foundation of the remedy is that courts of equity will not encourage fraud, and as a wife’s separate estate is under its special guardianship a trust for her benefit, and as she can not bind herself, they will not allow her to plead *175 her disability where she has received the benefit and in conscience should pay.
They do not proceed on the fiction that the creation of the ■debt was an appointment or charge created by the oioner, but from, the equity of the case the court would make it a ■charge, and to that énd it would presume an intention to do what in equity should be done. Owen v. Dickenson, 1 Cr. & Ph. 48; N. Am. Coal Co. v. Dyett, 7 Paige, 9; Heatly v. Thomas, Story Eq., 1400, 1897.
Judge Comstock says (18 N. Y. 275): The principle which now governs in cases of this kind is, that the wife’s separate estate is liable to pay her debts, in whatever form they are incurred, not because her contracts have any validity at law, nor by way of appointment or charge, but because equity decrees it to be just that they should be paid out of such ■estate.
“ Of course it is not to be denied that a wife may appoint or specifically appropriate her separate estate to her husband’s debt. She may, if she pleases, even give it to her husband. What I am denying is, that contracting the debt is, of itself, an appointment or charge.”
In that case it was held that “ a married woman does not charge her separate estate as surety on a promissory note for her husband, not for her own benefit or the enhancement of her estate.” It is further said:
“ Can, then, the principle on which the liability depends be extended to cases of mere suretyship for the husband or a stranger ? It seems to me it can not. The obligation of a surety, in all other cases, is held to be stricti juris, and if his contract is void at law, there is no liability in equity founded on the consideration between the principal parties. Thus, in Ludlow v. Simond (2 Cai. Cases in Error, 1), the bill was filed to sustain a contract against a surety who had been technically discharged at law. The subject was very fully examined in the court of errors by Chief Justice Kent and by Justices Spencer and Thompson, and the suit was determined against the plaintiff on the ground that there was no equitable liability upon a surety where he could not *176 be held at law. Why should a married woman be made an* exception to this rule ? We are to remember that her contract is absolutely void at law; and when she is a mere-surety there is no equity springing out of the consideration. If the promise is on her own account, if she or her separate estate receive a benefit, equity will lay hold of those circum-' stances and compel her property to respond to the engagement. Where these grounds of liability do not exist, there-is no principle on which her estate can be made answerable. If we hold that the signing of a note as surety brings a charge upon her estate, we must go further, and hold also-that her guaranty, her indorsement, her accommodation acceptance, her bail bond, indeed every conceivable instrument'which she may be persuaded to sign for her husband, or others, although absolutely void at law, are so far binding in equity as to charge her property with its payment. This would be a doctrine sustained by no analogies and opposed to the soundest policy. It would go far to withdraw those checks which are intended to preserve a wife from marital influences, which may be and often are unduly exerted, and yet baffle all detection. The doctrine that equity regards her as a feme sole, in respect to her separate estate, only admits that she may dispose of such estate with or without the consent of her husband, and without the solemnities which the law in other cases requires. But her mere-promise to pay money, as we have seen, is not of itself such a disposition. Courts of equity, proceeding in rem, will take hold of her estate and appropriate it to the payment of her-debts. But when her obligation is one of suretyship merely, she owes no debt at law or in equity. If not at law, which is very clear, then quite as clearly not in, equity.”
In the argument on the demurrer, it was claimed that the wife could not introduce evidence to show that there was-no intention to charge her estate, as that would contradict the contract made by the indorsement. It is insisted that, by her indorsement she is conclusively presumed to have intended to charge her estate.
*177 By the tei’ms of the instrument her engagement, treating her as a feme sole, was that of an indorser of commercial paper.
She was creating no debt or other obligation from which .the common law would imply.a promise to pay otherwise than as the legal effect would impose. Like all other sureties, if she is liable at all, in the absence of a contract to charge her separate property, she is liable on the words of her contract. The plaintiff would deny her the right to show there was no such contract to charge, and by implication create for her an engagement neither expressed nor legally implied from such an indorsement.
The indorsement made no provision for charging her estate.
Such a provision can not be inferred or implied without adding something to the indorsement which is not in it, and this can not be done otherwise than in writing in the indorsement itself. It is useless to say that if we do not hold that the wife, by her simple indorsement of her husband’s note in blank, intended to charge the payment of the note upon her separate estate, we must suppose she meant nothing by the paper; for by the same reasoning every writing would necessarily be of some effect, and every contract of a married woman valid.
Upon this point we adopt the language of the court in Vale v. Dederer, 22 N. Y. 456:
“ The intention here spoken of is not an intention which is proved by extraneous evidence dehors the contract, but an intention wrhich is to be inferred from . . . the contract itself. No court has ever held or intimated that parol evidence was admissible to prove that a bond or note of a feme covert was intended to be a charge on her estate. To prevent this would be in direct conflict with the rule that excludes all parol evidence offered to explain a written instrument.
“ The intent, to be of importance, must be a part of the contract; that is, the true meaning of the contract, when *178 justly interpreted, must be that the debt which it creates should be a charge upon the estate.”
Edwards on Bills and Promissory Notes, second od., sec. 70, states the law of the case correctly :
“ Even where she (the wife) has a separate estate it wilL not be charged with debts incurred by her, unless they are 'incurred with that understanding. There must be an intention to charge her separate estate; otherwise the debt will not affect it.
“ The act of signing and delivering -with her husband a joint and several promissory note for personal property pux’chased by him does not charge her sepax’ate estate; for the law will not infer or 'imply an intention on her part to make the charge, from the mere fact that she executed the instrument. The intention to make the charge must be declared in the contract itself; if that be in wilting, the intention cannot be shown by parol outside of the written engagement; while as to her separate debts, eontx’acted separately on her own account, the inference is, that she intended to make the charge. In brief, a debt contracted either for the benefit of the separate estate of the wife, or for her own benefit, upon the ci’edit of her separate estate, may be collected out of her separate property.”
While in some of the states there are decisions to the effect, that from the mere fact of signing a'note by a married woman for the accommodation of another, a court of equity will imply an intention to chai'ge the separate es-' date; yet the decided weight of authoi’ity accords with sound principles of equity and a wise public policy, in holding, that in case of a married woman, as in all cases of persons not under disability, the contract of surety-ship is one the party has actually made, by the party sought to be chai’ged, and that, in such case, a court of chancery will not imply an intention to charge her estate, from the mere fact of becoming surety for her husband, and then specifically enforce that implied-contract.
If she had induced the indorsee to take the note by any act of hers, upon the faith of her estate that would amount *179 to an equitable estoppel, it might perhaps be otherwise. As was said in Willard v. Eastham, 15 Gray, 828, and the rule as now settled in New York and Massachusetts is: “ That, when by the contract the debt is made expressly a charge upon the separate estate, or is expressly contracted on its credit, or when the consideration goes to the benefit of such estate, or to enhance its value, then equity will decree that it shall be paid from such estate or its income, to the extent to which the power of disposal by the married woman may go; but where she is a mere surety, or makes the contract for the accommodation of another, without consideration received by her, the contract being void at law, equity will not enforce it against the estate unless an express instrument makes the debt a charge upon it. It has been held, on like grounds, in numerous instances, that to render the general estate of a married woman liable the debt must be contracted for the benefit of the estate, or for her benefit on the credit of the estate, or the charge must be imposed in terms by the contract.”
See, also, Story on Equity Jurisprudence, sec. 1401 (a):
“Not many years back this subject underwent a careful examination in the court of chancery appeal, and after a thorough revision of the leading cases upon the subject from the earliest period, Lord Justice Turner, who delivered the leading opinion, came to. the conclusion that a court of equity, having created • for married women a separate estate, lias enabled them to contract debts in respect to it; that their separate estate may be subjected to the payment of such debts, and that a court of equity will give execution against it; but it was here held, that something more is necessary to bind the separate estate of a married woman than the mere existence of such facts as would create a debt against a single woman. It should appear that an engagement was made with reference to and upon the faith or credit of the estate; and where a married woman, living apart from her husband and having separate estate, contracts debts, the court will impute to her the intention of dealing with her separate estate, unless the *180 contrary is known. Bat where the wife becomes a party to an accommodation note, as surety merely, it has been held that her separate estate is not liable for the payment of it, unless she expressly charge it for that purpose.”
“ In an action against husband and wife, to charge the separate estate of the wife, upon a note or bond signed by the husband and wife, the legal inference is, that it -was the debt of the husband. The legal conclusion is, that it could not be the debt of the wife, she being incompetent to contract it. In order to charge the separate estate of the wife, there must be something to show that it was given for her benefit — that is, for the use of her separate estate.” Goodall v. McAdam, 14 How. Pr. (N. Y.) 385.
“A debt contracted by a married woman, for the accommodation of another person, without consideration received by her, will not be enforced in equity against her separate estate, unless made a charge upon it by an express instrument.” Willard v. Eastham, 15 Gray (Mass.), 328.
And in the opinion, p. 334:
“We can see no sufficient reason for holding a contract which is wholly void at law, from which neither the married woman nor her estate receives any benefit, and which does not in any manner refer to her separate property or undertake to make any charge upon it, to be a contract relating to such property.
“ And we think upon mature and full consideration, that the whole doctrine of the liability of her separate estate to discharge her general engagements rests upon grounds which are artificial, and which depend on implications too subtle and refined. The true limitations upon the authority of a court of equity in relation to the subject are stated with great clearness and precision in the elaborate and well-reasoned opinions of the court of appeals in New York in the case of Yale v. Dederer.
The ease referred to by Story is one of the very latest English cases on this point. We refer to Johnson v. Gallager in the court of chancery appeal. (The Jurist U. S., vol. 7, pt. 1, p. 273.) It is an able and exhaustive review of ail *181 the English eases, and may be regarded as a successful effort to settle the disputed questions involved, arising from the conflicting grounds upon which the courts of chancery in that country have acted.
The result which that high court has finally reached is in harmony with the foregoing conclusions, and are thus stated:
“A court of equity, having created for a married woman a right to a separate estate, has enabled them to contract debts in respect to it-, and, although the persons of married women can not be made liable for their debts either at law or in equity, their separate estate may in equity be rendered so liable; and a court of equity will give execution against such separate estate just as a court of law gives execution against the property of other debtors. There is no sound distinction, either in principle or authority, between special and simple contract debts, as to the liability of her separate estate for the same respectively.

“ Something more than the obligation which the law would create in the case of a single woman is necessary to affect the separate estate, and in order to bind the separate estate by a general engagement, it should appear that an engagement was made with reference to and upon the faith and credit of that estate”

Sir Knight Bruce, Lord Justice, says: “ Upon the whole, I have come to the conclusion that not only bonds, bills and promissory notes of married women, but all their general engagements may aifect their separate estates, except so far as the statute of frauds may interfere, where the separate estate is real property.” . . . “ It seems to follow that to affect the separate estate, there must be something more than the mere obligation which the law would create in the ease of a single woman. What that something more must be depends in each case on the circumstances.” “According to the best opinion which I can form on a question of so much difficulty, I think that in order to bind the separate estate by a general engagement, it should appear that the engagement was made with reference to and upon the faith or *182 credit of that estate, and that whether it was so made or not is a question tobejndged of by the court upon all the circumstances of the case.” Parker v. Simmons, 4 Allen, 258; Keaton v. Scott, 25 Geo. 652; Yale v. Dederer, 18 N. Y., 265 and 22 N. Y:, 450; Wolf v. Van Meter, 19 Iowa, 134; Shannon v. Canney, 44 N. K. 592; Peake v. LeBarr, 6 C. E. Green, 269; Armstrong v. Ross, 5 C. E. Green, 109; 1 White & Tudor, Lead. Cases (401 to 427), and cases cited; Coleman v. Woolley’s Ex’rs; 10 B. Mon. 320; Bell v. Keller, 13 B. Mon. 384; Thomas v. Folwell, 2 Whart. 11, 16; Com. Ex. Bank v. Babcock, 42 N. Y. 613.
We do not undertake to say, as is held in New York and Massachusetts, that the intention to charge a married woman as a surety must be expressed in the instrument itself, nor that she may not charge her separate estate by a parol contract or engagement. These questions are left for decision when they arise; We have cited these authorities in support of the simple case before us, that a court of equity will not imply an intention to charge the separate estate, from the mere fact of an accommodation indorsement to enable the husband to negotiate a note.
This conclusion is in complete harmony with the legislation of this state in favor of married women, and like those statutes will serve to protect married women in the enjoyment-of their separate estate, freed from the dangers to which they would be subjected, and the perils of having their property swept away by going surety for their husbands, whether induced to do so by the peruasive influence of affection, or to avoid unpleasant domestic relations. Public policy supports this rule.
Our statutes have exempted the wife’s property from the payment of the husband’s debts upon execution, and have divested him of all interest in or control over it. They give her the -right to prevent the sale of his property in certain instances. This is for the wife’s benefit and protection. Why should equity seek to destroy that protection by appropriating all her property for the husband’s *183 debts, when she has not clearly and fairly intended it should be done ?
Under this legislation she has the sole control of all her property, and can make contracts valid in law concerning it, as authorized thereby. There is no longer any foundation for the argument, that as equity creates and protects separate estates,, it has the right to control them. The English cases which have largely rested on this idea, always somewhat illusory, will now have but little weight.
The jus disponendi which attaches in Ohio to the estates of married women, is largely regulated by statute. She can not convey, or mortgage, or lease for a longer period than three years without the consent of her husband. Her separate estate created by statute is subject to his curtesy ; and all contracts concerning it made by her other than for labor and materials for improving, repairing, and cultivating the same, or for leasing for less than three years, are subject to her disabilities as a feme covert as well as to the limitations imposed by the statutes regulating conveyances and of frauds, whenever they are applicable, except where a case is made for the intervention of a court of equity to charge such separate estate.
Decree for Rosine Straehle, and cause remanded.